TOWN OF WENDELL & another[1] *vs.* ATTORNEY GENERAL
& others.[2]

Franklin.   January 10, 1985. — April 11, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Municipal Corporations,* By-laws and ordinances, Home rule, Board of
health. *Constitutional Law,* Home Rule Amendment. *Agriculture. En-
vironment,* Pesticide.

Discussion of the determination whether a municipal ordinance or
by-law is "inconsistent" with a statute, under § 6 of the Home Rule
Amendment, art. 89 of the Amendments to the Massachusetts Constitu-
tion. [523-525]
A town by-law purporting to regulate the use of pesticides within the
town for other than agricultural or domestic uses was not a proper
exercise of municipal powers under the Home Rule Amendment to the
Massachusetts Constitution inasmuch as the by-law, by permitting the
town's board of health to decide at the local level the same questions
which the Legislature had committed to a State agency, would frustrate
a legislative purpose of G. L. c. 132B, the Massachusetts Pesticide
Control Act, of having a centralized, Statewide determination of the
reasonableness of the use of a specific pesticide in particular cir-
cumstances. [526-529]
A comprehensive regulation governing the use of pesticides, adopted by
a town's board of health, was in excess of the board's authority and
thus invalid, where the regulation, if implemented by the board, would
have frustrated the legislative purpose of G. L. c. 132B, the Mas-
sachusetts Pesticide Control Act, of having a centralized, Statewide
determination of the reasonableness of the use of a specific pesticide in
particular circumstances. [529-530]

[1] The Conservation Law Foundation of New England, Inc., was permitted
to intervene as a plaintiff.
[2] The Massachusetts Electric Company, the New England Power Com-
pany, the Western Massachusetts Electric Company, Northeast Utilities
Service Company, and the Boston and Maine Corporation, individually and
on behalf of all members of the Massachusetts Railroad Association, were
permitted to intervene as defendants.

CIVIL ACTION commenced in the Superior Court Department on May 28, 1982.

The case was heard by *George J. Hayer,* J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Judith Pickett* for the town of Wendell.

*Peter Shelley* for Conservation Law Foundation of New England, Inc.

*Duncan S. Payne* for Western Massachusetts Electric Company & another (*John F. Sherman, III, & Janis A. Callison* for Massachusetts Electric Company & another, with him).

*Francis S. Wright* for Massachusetts Railroad Association.

*Madeline Mirabito Becker,* Assistant Attorney General, for the Attorney General.

*Gregor I. McGregor,* for Massachusetts Association of Conservation Commissions, amicus curiae, submitted a brief.

WILKINS, J. The town of Wendell (town) commenced this action to challenge the Attorney General's disapproval under G. L. c. 40, § 32, of a by-law, adopted by the town at its 1981 annual town meeting, which purports to regulate the use of pesticides in the town for other than agricultural and domestic uses. The town sought an order directing the Attorney General to approve the by-law and determining that the by-law is valid. Subsequent to the Attorney General's disapproval of the by-law on November 20, 1981, the Wendell board of health adopted a regulation on July 13, 1981, also purporting to regulate the use of pesticides. By counterclaims, the defendant interveners additionally raised a challenge to the validity of the board of health regulation.[3] A judge of the Superior Court affirmed the Attorney General's disapproval and ruled that the board of health regulation exceeded the board's authority. We allowed the parties' applications for direct appellate review.

---

[3] For the purposes of this case, the board of health regulation may be treated as substantively the same as the by-law. By its terms, however, it applies to agriculture and domestic uses and contains certain prohibitions, based on prohibitions in the Massachusetts Pesticide Control Act, G. L. c. 132B, not set forth in the by-law.

The Wendell by-law, set forth in the margin as it appears in the record,[4] requires any person who intends to apply a

[4] *"Article 1. Purpose.*

It is the purpose of this bylaw to establish rules of general applicability for the use of pesticides in the Town of Wendell for the purpose of protecting the health, environment and safety of the citizens of the Town of Wendell.

It is the further purpose of this bylaw to afford the Town an opportunity to acquire data, views and arguments relative to the utilization of pesticides in the Town of Wendell and to allow reasonable access to information and data relating to those pesticides to be utilized.

It is the further purpose of this bylaw to establish verification that those pesticides utilized in the Town of Wendell are in compliance with all applicable federal and state laws, included, but not limited to, the Massachusetts Pesticide Control Act and the Federal Insecticide Fungicide and Rodenticide Act and any rules and regulations promulgated thereunder.

*"Article 2. Prohibited Distributions.*

No person shall distribute, apply, handle, dispose of, discard or store any pesticide in such a manner as to cause injury to humans, vegetation, crops, livestock, wildfire, beneficial insects, to cause damage to the environment or to pollute or contaminate any water supply, waterway, groundwater or waterbody.

*"Article 3. Conformance, Procedure, Notice.*

Any person who intends to utilize a pesticide (hereinafter 'applicant') within the Town of Wendell shall first give written notice to the Board of Health (hereinafter 'Board') ninety (90) days prior to the time said pesticide is to be utilized.

The aforesaid notice to the Board shall contain the following:

1. The name and chemical make-up of the pesticide to be utilized.
2. The date or dates the pesticide is to be utilized.
3. The method of application.
4. The location that the pesticide is to be utilized. '
5. The purpose of the utilization of said pesticide.
6. The names and addresses of all abutters to the location at which the pesticide is to be utilized.

The Board shall hold a public hearing within thirty (30) days of the receipt of the aforesaid notice at which time the applicant shall be present. The Board shall afford interested persons an opportunity to present data, views and arguments in support of and in opposition to said utilization. The applicant shall be prepared to provide reasonable access to data relating to said pesticide and shall further be prepared to provide verification that the applicant has complied with the Massachusetts Pesticide Control Act.

Notice of said public hearing shall be posted by the Board in at least three (3) public places within the Town and shall be given in writing to the abutters fourteen (14) days prior to said hearing.

The Board may from time to time adopt rules relating to the procedures to be utilized at said public hearing.

pesticide within the town for other than an agricultural or domestic use to give written notice to the board of health

---

The Board, after said hearing, shall make a determination as to whether the applicant has complied with the Massachusetts Pesticide Control Act and that the application of the pesticide presented to the Board is not a danger to the health, enviroment or safety to the citizens of the Town of Wendell.

Further, if the Board determines that the pesticide presented to the Board by the applicant is unsafe and presents a danger or a possible danger to the health, environment or safety of the citizens of the Town, or is in violation of Article 2 of this bylaw, the Board may formulate and prescribe condition(s) for the application of said pesticide. Said condition(s) shall be for the purpose of protecting the health, environment and safety of the citizens of the Town and shall be consistent with but not limited to those restrictions put forth in the Massachusetts Pesticide Control Act. Compliance with said condition(s) prescribed by the Board shall be a prerequisite for the applicant's use of the pesticide.

It is contemplated that said condition(s) may include, but are not intended to be limited to, such items as time of application, weather conditions, area of application, population density, proximity to groups, etc.

"*Article 4. Administration.*

Section 1. This bylaw shall be enforced by the Board of Health for the Town of Wendell. A violator of any provision of this bylaw shall be punished by a fine of not more than $200.00 each day, or a portion thereof, during which the violation continues.

Section 2. The invalidity of any article, section or provision of this bylaw shall not invalidate any other section or provision thereof.

Section 3. Where the application of this bylaw imposes greater restrictions than those imposed by any other regulations, the provisions of this bylaw shall control.

Section 4. This bylaw shall not apply to agricultural or domestic uses.

"*Article 5. Definitions.*

For the purposes of this bylaw, definitions shall be as the context and general use require unless otherwise set forth.

Pesticide: A substance or mixture of substances intended for preventing, destroying, repelling or mitigating any pest, and any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant; provided that the term 'pesticide' shall not include any biological or inert substance.

Person: An individual, association, partnership, corporation, company, business organization, trust, estate, the Commonwealth or its political subdivision, administrative agencies, public or quasi-public corporation or body, or any other legal entity or its legal representative.

Domestic Use: Any application which is incidental and accessory to use for the applicant's principal place of residence.

at least ninety days prior to the proposed use. The notice must state (1) the name and chemical makeup of the pesticide to be used, (2) the date or dates of proposed use, (3) the method of application, (4) the location where it is to be used, (5) the purpose of the proposed use, and (6) the names and addresses of all abutters to the site of the proposed application. The board of health must hold a public hearing within thirty days of receipt of the notice, at which any interested person may present information and arguments for or against the proposed use. The applicant must be prepared to provide reasonable access to data relating to the pesticide and verification that it has complied with G. L. c. 132B, the Massachusetts Pesticide Control Act (act).

According to the by-law, after the hearing, the board of health must determine whether the applicant has complied with G. L. c. 132B and "that the application of the pesticide . . . is not a danger to the health, enviroment [*sic*] or safety to [*sic*] the citizens of the" town. If the board determines the pesticide is unsafe or presents a danger or possible danger to the health, environment, or safety of the citizens of the town, it may prescribe conditions, not limited to "those restrictions put forth in" the act. The by-law does not by its terms permit the board of health to deny use of a pesticide, but it clearly authorizes the board to impose greater restrictions on the use of a pesticide than those imposed under the act.

In his explanatory letter of disapproval of the by-law, the Attorney General, acting through an assistant attorney general, stated that local, as opposed to State, regulation of pesticides was preempted by Federal law and that the by-law was also preempted by the Massachusetts Pesticide Control Act. The determination of preemption by the act was based on a conclusion that the by-law was inconsistent with State law and thus not permitted under the Home Rule Amendment. See art. 2

---

Agricultural Use: Any application which is incidental and accessory to use for agriculture or farming as defined in Section 1A of Chapter 128 of the Massachusetts General Laws.

Application: The distribution of, application of, handling of, disposal of, discarding of, or storage of a pesticide."

of the Amendments to the Constitution of Massachusetts, as appearing in art. 89 of those Amendments. See also the Home Rule Procedures Act, G. L. c. 43B, § 13. Under § 6 of the Home Rule Amendment (and § 13 of the Home Rule Procedures Act), a city or town may adopt local ordinances or by-laws to exercise "*any power or function* which the general court has power to confer upon it, *which is not inconsistent with* the constitution or *laws enacted by the general court* in conformity with powers reserved to the general court by [§ 8 of the Home Rule Amendment] . . . (emphasis supplied)." Because we conclude that the by-law was inconsistent in a significant respect with the Massachusetts Pesticide Control Act, we need not decide whether the by-law is preempted, and thus unlawful, under Federal law, as the motion judge ruled. We decide also, in the concluding portion of this opinion, that in the same respect the board of health regulation is unlawful.

We shall first discuss the appropriate standard for determining whether the Wendell by-law is "not inconsistent" with the Massachusetts Pesticide Control Act according to principles applicable under the Home Rule Amendment. Next, we shall describe the provisions of the act as they particularly relate to the issues in this case. We then demonstrate that there is nothing in the act concerning the role of municipalities in pesticide control or in the stated purpose of the act that explicitly bars all local regulation. Finally, we consider the by-law's attempt to provide greater regulation of the use of pesticides than is called for by the act and conclude that in this regard the by-law impermissibly frustrates the identifiable statutory purpose of centralized regulation of pesticide use.

In deciding whether under § 6 of the Home Rule Amendment a municipal ordinance or by-law is "not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court" § 8 of the Home Rule Amendment, we have said that "[t]he legislative intent to preclude local action must be clear." *Bloom* v. *Worcester,* 363 Mass. 136, 155 (1973). In the *Bloom* case, we considered a Worcester ordinance that established and granted certain powers to a human rights commission. In holding that the

ordinance was valid, we noted that there was neither an express legislative intent to forbid local activities consistent with the purpose of the State's antidiscrimination legislation nor circumstances showing that the purpose of State legislation would be frustrated so as to warrant an inference that the Legislature intended to preempt the field. *Id.* at 160.

The task is, of course, relatively easy if the Legislature has made an explicit indication of its intention in this respect. *Id.* The hard cases are those in which it is asserted that a legislative intent to bar local action should be inferred in all the circumstances. In some instances, legislation on a subject is so comprehensive that an inference would be justified that the Legislature intended to preempt the field. *Id.* If, however, the State legislative purpose can be achieved in the face of a local by-law on the same subject, the local by-law is not inconsistent with the State legislation, unless that legislation explicitly forbids the adoption of such a by-law. *Id.* at 156.

There is no presumption, as in the case of due process or equal protection challenges to legislation, in favor of the constitutionality of a by-law challenged on home rule grounds as inconsistent with a statute. However, the effect is much the same because such a by-law should be upheld against an inconsistency challenge of the type involved in this case unless the legislative intent to preclude local action is clear, either because of an explicit statement or because the local enactment prevents the achievement of a clearly identifiable purpose. See *Marshfield Family Skateland, Inc.* v. *Marshfield,* 389 Mass. 436, 440, appeal dismissed, 464 U.S. 987 (1983); *Grace* v. *Brookline,* 379 Mass. 43, 54 (1979).

The question is not whether the Legislature intended to grant authority to municipalities to act concerning pesticides, but rather whether the Legislature intended to deny Wendell (and other municipalities) the right to legislate on the subject of pesticides as Wendell has. On some occasions, the answer to the question of inconsistency may be found relatively easily because of the nature and scope of the State legislation involved. See *Lovequist* v. *Conservation Comm'n of Dennis,* 379 Mass. 7, 15 (1979) (where State statute authorizes local

action more stringent than provided under State statute, there is no disqualifying inconsistency between the local regulation and the State statute); *New England LNG Co.* v. *Fall River,* 368 Mass. 259, 267 (1975) (local ordinance could not regulate facilities of gas companies as to matters expressly delegated to the Department of Public Utilities); *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 12 (1975) (legislation taking the entire subject of the establishment, powers, and duties of planning boards in hand precludes inconsistent local action). In other cases, the task has been more difficult and views of the Justices sometimes have not been unanimous. See *County Comm'rs of Bristol* v. *Conservation Comm'n of Dartmouth,* 380 Mass. 706 (1980), and *id.* at 718 (Wilkins, J., dissenting) (county commissioners may disregard local zoning restrictions in exercising power of eminent domain); *Beard* v. *Salisbury,* 378 Mass. 435, 440-441 (1979) (majority of the court conclude that a municipality may not use its authority to regulate earth removal to forbid transport of fill out of the town on public ways); *Revere* v. *Aucella,* 369 Mass. 138, 145 (1975) (4-2 decision) (municipal ordinance relating to activities at licensed premises not inconsistent with legislation concerning local licensing boards). Cf. *Anderson* v. *Boston,* 376 Mass. 178, 186 (1978), appeal dismissed, 439 U.S. 1060 (1979) (comprehensive legislation concerning political fund raising and expenditures bars municipality from appropriating funds for the purpose of influencing the result of a Statewide referendum question). In a close case, the considerations influencing the decision depend on the particular circumstances and a perception of the extent to which the Legislature has or has not made a preemptive intent clear. In such an analysis, it is not inappropriate to take note of what has or has not been traditionally a matter of local regulation. The differences in certain results may seem to some to be difficult to reconcile or based on subjective considerations (see Jerison, Home Rule in Massachusetts, 67 Mass. L. Rev. 51, 59 [1982]), but we have never abandoned the standards of the *Bloom* opinion and shall continue to apply them.

The Massachusetts Pesticide Control Act (G. L. c. 132B, § 1, inserted by St. 1978, c. 3, § 3, and as amended by St. 1981, c. 722, adding § 6B) establishes a pesticide board within the Department of Food and Agriculture (§ 3). The act sets forth a comprehensive plan concerning the distribution of pesticides (§ 6); the registration by a subcommittee of the pesticide board (§ 3A) of a pesticide for general or restricted use, "when used in accordance with its directions for use, warnings and cautions and for the uses for which it is registered" (§ 7); the granting of experimental use permits (§ 8); and the issuance of certifications and licenses to individuals to use pesticides "in accordance with the provisions, standards and procedures contained in and established pursuant to" the act (§ 10).

The pattern of the act is to bar any person from using a registered pesticide in a manner "inconsistent with its labeling or other restrictions imposed by the department" (§ 6A). Only an appropriately certified applicator, or a competent person acting under the direct supervision of a certified applicator, may use a pesticide certified for restrictive use (§ 6A). The act does not require approval, by permit or otherwise, prior to the application of a particular pesticide in a particular area under specific conditions, but rather it contemplates that the labeling and other restrictions applicable to a pesticide will govern its use. The act does, however, require that a utility company contemplating use of a herbicide on a right-of-way give notice to municipal officials twenty-one days prior to any spraying of (1) the approximate dates of spraying, (2) the type of herbicide to be used, with "a copy of all information supplied by the manufacturers thereof to the utility relative" to the herbicide, and (3) the name and address of the contractor or employee who will make the application (§ 6B).

We find nothing in the act that explicitly authorizes local regulation of pesticide applications, and, more importantly for the purposes of this case, we find nothing in the act that explicitly forbids local regulation. References in the act to municipal involvement in the process are few, and they provide nothing of significance warranting an inference that local regulation was intended to be forbidden. A "person" is defined to

include a political subdivision (§ 2). Section 2 of the 1978 act (St. 1978, c. 3) repealed G. L. c. 94B, § 21B, which authorized the pesticide board's predecessor to permit local authorities, such as boards of health, to enforce the State board's rules and regulations governing the distribution and use of pesticides in their communities. However, § 5 of the current act, in a somewhat compensating way, permits the department, with approval of the board, to enter into cooperative agreements with various agencies, including political subdivisions. This change gives rise to no inference of State preemption. We have already mentioned the requirement of § 6B that utilities notify municipalities of proposed spraying of a right-of-way. That notice requirement suggests legislative recognition of a local interest in the proper application of herbicides on a utility's right-of-way, but § 6B offers nothing to guide us on the question whether the Legislature impliedly intended to forbid local regulation. Certainly, § 6B implies a right in a municipality to consider the material submitted to it and to reflect on the local consequences of the proposed application. Section 15 of the act concerning inspections and the seizure of pesticides states that § 15 should not be construed to abrogate any powers and duties of any political subdivision. The absence of similar language in other sections of the act, denying any abrogation of municipal powers, may suggest that other sections of the act did abrogate municipal powers, but the force of the suggestion is at best weak.

The stated purpose of the 1978 act, set forth in its emergency preamble, "is to conform the laws of the commonwealth with federal requirements on registration and certification of pesticides." If there were some indication in the act that the Legislature believed, even erroneously, that Federal requirements compelled all regulation to be at the State level to the total exclusion of local regulation, that declaration of purpose might well be dispositive of the issue before us. However, we have no such guidance.

The degree of comprehensiveness of the act cannot itself foreclose all local by-laws. It is not the comprehensiveness of legislation alone that makes local regulation inconsistent with

a statute. *Bloom* v. *Worcester,* 363 Mass. 136, 156 (1973). The question, as our opinions have said, is whether the local enactment will clearly frustrate a statutory purpose. We thus turn to this question.

If the Wendell by-law were fashioned simply to require a local public hearing, held within the time limits indicated by § 6B, to give the town board of health an opportunity to determine whether the proposed application of pesticides in particular locations would be consistent with the product's labeling and other restrictions imposed by the department, we would see no inconsistency with or frustration of the act's purpose. The burden on railroads and utilities to participate in proceedings under such a limited by-law would not be slight, but there is no indication in the act that it was enacted to relieve those entities of the burden of participation in local hearings. The sole function of a hearing under such a limited by-law would be to determine whether the applicant was proposing to use particular pesticides only as permitted by law. There is no need for such expedition in the application of pesticides that local scrutiny of the process is inferentially forbidden by the act.

On the other hand, a limited investigation to determine anticipated compliance with State standards may not be worth the town's involvement and, in any event, it is not what the by-law contemplates. The by-law permits the board of health to make its own determination, not only that the applicant will comply with the act but also that "the application of the pesticide presented to the Board [of health] is not a danger to the health, enviroment [*sic,*] or safety to [*sic*] the citizens of the Town of Wendell." If such a determination is made, the board may not bar use of the pesticide but may impose conditions for the application of the pesticide in addition to those established by the State agency in certifying the pesticide. See by-law art. 3, next to last and last paragraphs, and art. 4, § 3, at n.4 above.

The Wendell by-law contemplates the possibility of local imposition of conditions on the use of a pesticide beyond those established on a Statewide basis under the act. Under § 7 of the act, the board's subcommittee will have already made specific findings concerning a pesticide registered by it. G. L.

c. 132B, § 7. In the process of deciding to register a pesticide, the subcommittee will have determined that the composition of the pesticide warrants the claims proposed for it; that its labeling meets the requirements of the act; that "it will perform its intended function without unreasonable adverse effects on the environment," and that "when used in accordance with widespread and comonly recognized practice it will not generally cause unreasonable adverse effects on the environment" (§ 7).

The Legislature has placed in the subcommittee the responsibility of determining on a Statewide basis, pesticide by pesticide, whether its use will cause unreasonable adverse effects to the environment. By implication, a pesticide may cause adverse effects to the environment but, if those effects are not unreasonable, the pesticide may be registered and used. An additional layer of regulation at the local level, in effect second-guessing the subcommittee, would prevent the achievement of the identifiable statutory purpose of having a centralized, Statewide determination of the reasonableness of the use of a specific pesticide in particular circumstances. To permit a local board to second-guess the determination of the State board would frustrate the purpose of the act.

The Attorney General was thus correct in denying approval of the Wendell by-law. There is no procedure by which the Attorney General may properly approve only a portion of a by-law where there is a significant substantive deficiency in the by-law under the Home Rule Amendment. Because we do not, as the motion judge did, decide whether the by-law was preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. § 136-136y [1982]), the first numbered paragraph of the judgment is vacated and a new judgment shall declare the by-law invalid because it is inconsistent with the Massachusetts Pesticide Control Act, G. L. c. 132B.

The regulation of the board of health must fall for the same reasons we have just set forth. A local board of health has authority to make reasonable health regulations. G. L. c. 111, § 31. Such regulations, however, must be consistent with State

law. See *Bloom* v. *Worcester*, 363 Mass. 136, 154 (1973). The same degree of preemption that applies to the Wendell by-law applies to its regulation. Here, again, we rest our conclusion solely on the preemption by State law of that portion of the regulation that exceeds the board of health's authority and not for the additional reason, relied on by the motion judge, that the regulation was preempted by the Federal Insecticide, Fungicide, and Rodenticide Act. The second numbered paragraph of the judgment is vacated, and the new judgment shall declare the regulation invalid because it was adopted in excess of the authority of the board of health. The town has not requested that we approve such parts of the regulation that are consistent with State law, and we do not know whether the board of health would have adopted such a limited regulation.

In the third numbered paragraph of the judgment, the town was enjoined from enforcing against the interveners the by-law, the regulation, or any other town by-law or regulation "of any kind relating to pesticides and/or herbicide regulation." Because our opinion does not rest on Federal preemption grounds, this injunction is broader than it should be under our holding, because it purports to deal with future by-laws and regulations that may be consistent with State law. In any event, we assume that municipal officers will follow the law, and that in these circumstances no injunction is necessary. See *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 471 (1976). Therefore, we vacate the third numbered paragraph of the judgment.

A new judgment shall be entered consistent with this opinion.

*So ordered.*