St. George Greek Orthodox Cathedral of Western Massachusetts, Inc. *v.* Fire Dep't of Springfield.

## St. George Greek Orthodox Cathedral of Western Massachusetts, Inc. *vs.* Fire Department of Springfield & another.[1]

Hampden. January 6, 2012. - May 4, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Fire Prevention. State Building Code. Municipal Corporations,* By-laws and ordinances, Enforcement of building code. *Constitutional Law,* Home Rule Amendment. *Declaratory Relief. Practice, Civil,* Declaratory proceeding. *Administrative Law,* Exhaustion of remedies.

Discussion of the standard of review applicable to a grant of summary judgment. [123]

In a civil action brought by a church seeking a judgment declaring that a city's ordinance and its penalty provision were invalid as being in contravention of the State Building Code, an actual controversy existed between the city and the church, despite the city's contention that an invoice sent to the church purportedly assessing a fine was defective on its face, where the church continued to violate the ordinance in question, and the city could issue an enforceable violation notice; further, there was no merit to the claim that the church had failed to exhaust its administrative remedies. [123-125]

In a civil action brought by a church, challenging the validity of a city ordinance as being inconsistent with the State Building Code (code), the judge properly granted summary judgment in favor of the church, where the ordinance, which proscribed the installation of all but one of the four types of fire protection and detection systems permitted by the code, was preempted by the code, and was therefore invalid under the Home Rule Amendment to the Massachusetts Constitution. [125-130]

Civil action commenced in the Superior Court Department on August 13, 2009.

The case was heard by *Cornelius J. Moriarty, II,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas D. Moore,* Associate City Solicitor (*Edward M. Pikula,* City Solicitor, with him) for the defendants.

---

[1]The city of Springfield. We refer to a single defendant (city).

*John H. Fitz-Gibbon* (*John J. Green, Jr.*, with him) for the plaintiff.

The following submitted briefs for amici curiae:

*John J. Clifford* for Fire Chiefs Association of Massachusetts.

*Martha Coakley*, Attorney General, & *Peter Sacks*, Assistant Attorney General, for State Board of Building Regulations and Standards.

*John Pagliaro* & *Martin J. Newhouse* for New England Legal Foundation & another.

LENK, J. The State Building Code, 780 Code Mass. Regs. §§ 101.00 (2010) (code), permits the installation of any one of four types of approved "fire protective signaling systems and automatic fire detection systems" in buildings throughout the Commonwealth. See 780 Code Mass. Regs. § 907.14.3 (2008). In 2006, the city of Springfield (city) enacted an ordinance that, in essence, proscribes the installation of all but one of the systems allowed by the code. See § 7.13.035 (ordinance) of the Revised Ordinances of the City of Springfield (city ordinances). The question before us is whether the code preempts the ordinance. We hold that it does.[2]

1. *Background.* In 1972, the Legislature empowered the State board of building regulations and standards (board) to "adopt and administer a state building code." G. L. c. 143, § 93. See St. 1972, c. 802; St. 1974, c. 541. Pursuant to this authority, the board set forth four alternatives for required "fire protective signaling systems and automatic fire detection systems," 780 Code Mass. Regs. § 907.14.3 (2008),[3] which alert local fire departments when an alarm has been sounded.

---

[2]We acknowledge the amicus brief of the New England Legal Foundation and NAIOP Massachusetts in support of the plaintiff; and the amicus briefs of the State Board of Building Regulations and Standards (board) and the Fire Chiefs Association of Massachusetts.

[3]"All fire protective signaling systems and automatic fire detection systems required by 780 [Code Mass. Regs.] shall be supervised by one of the following methods below:

"1. A UL listed or FM approved Central Station Service in accordance with NFPA 72 as listed [in] 780 [Code Mass. Regs. §§] 35.00.

"2. . . . Approved propriety supervising station system, in accordance with NFPA 72 as listed in 780 [Code Mass. Regs. §§] 35.00.

In November, 2006, Title 7 of the Springfield city ordinances, entitled "Health and Safety," was amended with the enactment of the ordinance.[4] The ordinance requires that all buildings in the city utilize the fourth option contemplated by the code, which it described as a "[c]ity approved Radio Box." Under the terms of the penalty provision of the ordinance, failure to comply "shall be punished by a fine of One Hundred Dollars ($100.00) per calendar day" and "each calendar day on which the violation exists shall be deemed to be a separate offense." § 7.13.050 of the city ordinances.

Contrary to the ordinance, but in compliance with the code, the plaintiff, St. George Greek Orthodox Cathedral of Western Massachusetts, Inc. (church), installed a system of the sort set out as the first alternative in the relevant code provision during its April, 2009, renovations to the St. George Greek Cultural Center. After an inspection by the city's fire department in June, 2009, the city sent an "invoice" detailing a $3,000 "[v]iolation fine" owed by the church. The church appealed to the board, which ruled that the church had complied with the code. The board held that it was "without jurisdiction to grant [the church]

---

"[3.] Approved remote station fire alarm system supervising station in accordance with NFPA 72 as listed in 780 [Code Mass. Regs. §§] 35.00.

"[4.] Alarm signals to an approved Auxiliary Fire Alarm System in accordance with NFPA 72, with supervisory signals supervised by one or two above or at a constantly attended location approved by the local fire department, having personnel on duty trained to recognize the type of signal received and to take prescribed action. This shall be permitted to be a location different from that at which alarm signals are received." 780 Code Mass. Regs. § 907.14.3 (2008).

[4]Section 7.13.035 (ordinance) of the Revised Ordinances of the City of Springfield (city ordinances) provides:

"A. No Master Box shall be installed in the City of Springfield after the adoption of this ordinance.

"B. Any construction underway before or after the adoption of this ordinance calling for the installation of a Master Box shall instead have a City approved Radio Box installed.

"C. All Master Boxes located in the City of Springfield must be replaced with a City approved Radio Box by December 21, 2008. The owner(s) of the property where the Master Box is located shall be responsible for any and all costs of compliance with this ordinance."

the specific relief it ultimately seeks" (i.e., invalidation of the ordinance) because the board is "without authority to strike down an ordinance."[5]

The church then filed an action in the Superior Court seeking a judgment declaring the ordinance and its penalty provision invalid. Arguing that the ordinance is unenforceable as contrary to the code and the Home Rule Amendment to the Massachusetts Constitution,[6] the church moved for summary judgment; a Superior Court judge allowed the church's motion, thereby invalidating the challenged provisions. After the city appealed, we transferred the case to this court on our own motion.

2. *Discussion.* a. *Standard of review.* We review a decision to grant summary judgment de novo. See *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003). "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

b. *Declaratory judgment.* At the outset, the city objects to the appropriateness of the church's declaratory judgment action. Pursuant to G. L. c. 231A, § 1, the Superior Court "may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby . . . in any case in which an *actual controversy* has arisen and is specifically set forth in the pleadings" (emphasis supplied). The city first argues that no "actual controversy" exists because "the record does not show that the [c]hurch has been cited for any violation of a Springfield [c]ity [o]rdinance." The city characterizes the invoice purportedly assessing a $3,000 fine as "defective on its face"

---

[5]The board issued an advisory ruling, however, noting that the ordinance is in "direct conflict" with the State Building Code, 780 Code Mass. Regs. §§ 101.00 (2010) (code), and thus "appears to impermissibly directly regulate in an area which has been reserved for the [c]ode." As amicus on behalf of the church, the board takes the position that the code preempts the ordinance.

[6]The Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, provides, in relevant part: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is *not inconsistent with the constitution or laws enacted by the general court*" (emphasis supplied).

for failure to "include any information about appeals . . . , the citing officer or the circumstances surrounding the alleged violation."

An "actual controversy" plainly exists between the city and the church. An "actual controversy," a requirement that is to be "liberally construed," G. L. c. 231A, § 9, is presented where there exists "a 'real dispute' caused by the assertion by one party of a duty, right, or other legal relation in which he has a 'definite interest,' in circumstances indicating that failure to resolve the conflict will almost inevitably lead to litigation." *Entergy Nuclear Generation Co.* v. *Department of Envtl. Protection*, 459 Mass. 319, 325 (2011), quoting *District Attorney for the Suffolk Dist.* v. *Watson*, 381 Mass. 648, 659 (1980). Regardless whether the "invoice" describing a "[v]iolation fine" was actually effective,[7] the dispute over the validity of the ordinance remains an "actual controversy." A declaratory judgment action "may be used to secure determinations of right, duty, status or other legal relations under . . . a . . . municipal ordinance or by-law . . . including determination of any question of construction or validity thereof which may be involved in such determination." G. L. c. 231A, § 2. By maintaining its existing system, the church continues to violate the ordinance; in theory, the city could issue an enforceable violation notice at any time, with the fine increasing each day the church remains in violation of the ordinance.[8] Relief will therefore alleviate any "uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, § 9.

The city next argues that the church failed to exhaust its administrative remedies. See G. L. c. 231A, § 3. This claim is unavailing. The church has already appealed to the board, which

---

[7]The city's argument that its own invoice, describing a "[v]iolation fine," is unenforceable is, in any event, without merit. The invoice purportedly assessing the "violation fine" provides the reason for the fine, cites the ordinance and its penalty provision as authority for the fine, and states the amount of the fine. In addition to the absence of any supporting authority for its position, the city maintains, in seemingly contradictory fashion, that the church's failure to exhaust its administrative remedies involved "failure to file an appeal" of the very fine the city otherwise describes as defective.

[8]Indeed, the city has been vigilant about ensuring compliance with the ordinance, ordering the systems changed on 250 parcels of real property that were not in compliance. According to the city, only six remain in noncompliance.

462 Mass. 120 (2012)                                            125

St. George Greek Orthodox Cathedral of Western Massachusetts, Inc. *v.* Fire Dep't of Springfield.

correctly held that it did not have the power to invalidate the ordinance. The city does not suggest any other administrative remedy the church could have pursued. As no other avenue of administrative appeal has been authorized by which to strike down the ordinance, the church had no such remedy to exhaust. See *Ciszewski* v. *Industrial Acc. Bd.*, 367 Mass. 135, 141 (1975). Regardless, we have previously not required exhaustion in cases challenging a regulation's constitutionality, see *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex Offender Registry Bd.*, 459 Mass. 603, 629-630 (2011), and cases cited, and we see no reason not to extend this exception to constitutional challenges to local ordinances, particularly where, as here, the parties have stipulated to all relevant facts, and therefore no additional agency fact finding is necessary for us to answer the purely legal question presented. See *Kelleher* v. *Personnel Adm'r of the Dep't of Personnel Admin.*, 421 Mass. 382, 385 (1995).[9]

c. *Preemption.* Under the Home Rule Amendment, "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is *not inconsistent* with the constitution or laws enacted by the general court . . . ." See G. L. c. 43B, § 13 (Home Rule Procedures Act). Insofar as the ordinance conflicts with G. L. c. 143, § 93, and the code, the church contends that it is "inconsistent" with a law enacted by the General Court and thus impermissible under the Home Rule Amendment. The city, however, maintains that the ordinance is not inconsistent with the code because it allows buildings in the city to utilize one of the four "fire protective signaling systems and automatic fire detection systems" contemplated by the code. According to the city, such a narrowing of options does not render the ordinance more restrictive than, or inconsistent with, the code.

In assessing the inconsistency of local enactments with the General Laws, "[t]he legislative intent to preclude local action

---

[9]Although we conclude that both challenged requirements are amply met, to the extent there is a "measure of discretion in deciding whether a case is appropriate for declaratory relief," *Boston* v. *Keene Corp.*, 406 Mass. 301, 305 (1989), "because the issue is important, and might recur, we exercise our discretion to express our views on the issue." *Andrade* v. *City Council of Gloucester*, 406 Mass. 337, 338 (1989).

must be clear." *Bloom* v. *Worcester*, 363 Mass. 136, 155 (1973). This intent can be either express or inferred. In other words, local action is precluded either where the "Legislature has made an explicit indication of its intention in this respect," or where "the purpose of State legislation would be frustrated [by a local enactment] so as to warrant an inference that the Legislature intended to preempt the field." *Wendell* v. *Attorney Gen.*, 394 Mass. 518, 524 (1985).

In authorizing the development of the code, the Legislature has expressly stated its intention: to ensure "[u]niform standards and requirements for construction and construction materials . . . ." G. L. c. 143, § 95 (*a*). The Legislature has also defined explicitly the board's responsibility to "recommend or require tests and approvals and specify criteria and conditions, of materials, devices, and methods of construction," and stated that "[t]he board shall issue certification of such acceptability, which certification *shall be binding on all cities and towns*" (emphasis supplied). G. L. c. 143, § 94 (*d*). Further, the statute establishing the board[10] states that the code "shall be binding and have the full force and effect of law on January [1, 1975], in all cities and towns notwithstanding any special or general law to the contrary." St. 1972, c. 802, § 67. That statute further provides that, "[a]ll by-laws and ordinances of cities and towns or regulations promulgated by any state boards, commissions, agencies or departments or any special acts . . . in conflict with the state building code shall cease to be effective on January [1, 1975]." St. 1972, c. 802, § 75, as appearing in St. 1975, c. 144, § 1. "The above quoted sections, together with the whole of [St. 1972,] c. 802[,] and its subsequent amendments, evince a clear legislative intent . . . to create uniform standards throughout the Commonwealth for the construction of buildings and materials used therein . . . ." *Shriners' Hosp. for Crippled Children* v. *Boston Redevelopment Auth.*, 4 Mass. App. Ct. 551, 560

---

[10]It is of no moment that the code is promulgated by the board rather than directly by the Legislature. See *Boston Gas Co.* v. *Somerville*, 420 Mass. 702, 704 (1995); *Wendell* v. *Attorney Gen.*, 394 Mass. 518, 527 (1985). "[A] properly promulgated regulation has the force of law . . . and must be accorded all the deference due to a statute" (citations omitted). *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983).

462 Mass. 120 (2012)                                127

St. George Greek Orthodox Cathedral of Western Massachusetts, Inc. *v.* Fire Dep't of Springfield.

(1976).[11] See *Fire Chief of Cambridge* v. *State Bldg. Code Appeals Bd.*, 34 Mass. App. Ct. 381, 384 (1993).[12]

The intent to preempt local ordinances is reflected also in other sections of the chapter. "A conclusion that the Legislature intended to preempt a subject may also be inferred if the Legislature has explicitly limited the manner in which cities and towns may act on that subject." *Bloom* v. *Worcester, supra* at 155. Here, the Legislature has done just that, establishing a mechanism through which a municipality may request that the board allow it to utilize more restrictive standards than those required by the code. See G. L. c. 143, § 98. The city, however, did not seek board approval of its ordinance. Such a mechanism would serve no purpose had the Legislature not intended the code to preempt local building regulations. Any other view of G. L. c. 143, § 98, would impermissibly render it superfluous. See *Banushi* v. *Dorfman*, 438 Mass. 242, 245 (2002).

Our decision in *Wendell* v. *Attorney Gen., supra*, is instructive. The town of Wendell had adopted a bylaw regulating the use of pesticides. It required anyone who intended to apply pesticides in the town to give notice to the local board of health, which could then hold a public hearing at which any interested person could argue for or against the proposed use. *Id.* at 520-522. This bylaw, however, was adopted without regard to the Massachusetts Pesticide Control Act (MPCA), which comprehensively addressed the distribution and registration of pesticides. The MPCA also established a "pesticide board" within the Department of Food and Agriculture, and empowered a subcommittee of the board

---

[11]A report accompanying the legislation establishing the code described it as a response to the "growing complexity of the building enterprise" and the recognition that "very few municipalities have the expertise or funds to keep abreast of all the changes necessary to keep their codes current and to enforce them through proper administration." Report of the Department of Community Affairs Relative to the Development, Administration and Enforcement of Building Codes, 1972 House Doc. No. 5008, at 5. The report also described the proposed legislation as useful to "establish[ing] statewide uniformity," *id.* at 6, and "eliminat[ing] current local restrictions of new materials and technology and permit[ting] uniformity of application." *Id.* at 10.

[12]The city's contention that its ordinance furthers this goal because it ensures "uniformity throughout the [c]ity" is unavailing. The uniformity contemplated by the statute is clearly Statewide uniformity, not uniformity within each individual municipality.

to register pesticides for general or restricted use. *Id.* at 526. We held that the bylaw was preempted by the MPCA. The effect of the bylaw, we concluded, would be to impose "conditions on the use of a pesticide beyond those established on a Statewide basis under the [MPCA]." *Id.* at 528. To allow a locality to impose additional requirements and "second-guess the determination of the State board would frustrate the purpose of the [MPCA]." *Id.* at 529.

The same reasoning applies here. The Legislature intended to occupy a field by promulgating comprehensive[13] legislation and delegating further regulation to a State board. The board's regulations, in turn, set a Statewide standard as to what products and practices were permissible in a particular field, a process involving a discretionary weighing of relevant factors such as cost and safety. In response, the local government created an additional layer of regulation imposing requirements beyond those contemplated by the board. There is no meaningful distinction between these cases,[14] and we reach the same conclusion here: the code preempts inconsistent local regulations.

---

[13]The sheer comprehensiveness of the code itself demonstrates the Legislature's intention to foreclose inconsistent local enactments. "Where legislation deals with a subject comprehensively, it 'may reasonably be inferred as intended to preclude the exercise of any local power or function on the same subject because otherwise the legislative purpose of that statute would be frustrated.' " *Dartmouth* v. *Greater New Bedford Regional Vocational Technical High Sch. Dist.*, 461 Mass. 366, 375 (2012), quoting *Boston Teachers Union, Local 66* v. *Boston*, 382 Mass. 553, 564 (1981). The Legislature empowered the board "[t]o formulate, propose, adopt and amend rules and regulations," i.e., the code, which would govern "the construction, reconstruction, alteration, repair, demolition, removal, inspection, issuance and revocation of permits or licenses, installation of equipment, classification and definition of any building or structure and use or occupancy of all buildings and structures and parts thereof or classes of buildings and structures and parts thereof" and "the standards or requirements for materials to be used in connection therewith, including but not limited to provisions for safety, ingress and egress, energy conservation, and sanitary conditions." G. L. c. 143, § 94 (*a*). Indeed, while specialized codes governing fire prevention and safety predated enactment of the code, these were incorporated into the code by G. L. c. 143, § 96, thus forming a comprehensive system of regulation at the State level.

[14]Contrary to the city's claim, *Lovequist* v. *Conservation Comm'n of Dennis*, 379 Mass. 7 (1979), is not applicable here. In *Lovequist*, we held that a local bylaw was not preempted by the State Wetlands Protection Act because it "sets forth minimum standards only, 'leaving local communities free to

Where the Legislature demonstrates its express intention to preempt local action, inconsistent local regulations are invalid under the Home Rule Amendment.[15] See, e.g., *Connors* v. *Boston*, 430 Mass. 31, 39-40 (1999). Once the board has determined that a certain system is consistent with its responsibility to "reduce the cost of construction and maintenance over the life of the building without affecting the health, safety and security of the occupants or users of buildings," G. L. c. 143, § 95 (*b*), any subsequent local action amounts to "in effect second-guessing" the board's decision.[16] *Wendell* v. *Attorney Gen.*, *supra*. In addition, the ordinance would frustrate the achievement of the stated statutory purpose of having centralized,

---

adopt more stringent controls.' " *Id.* at 15, quoting *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 526 (1970). Unlike the Wetlands Protection Act at issue in *Lovequist*, G. L. c. 143 and the code are intended to occupy the field of building regulation.

[15]The complaint suggests that only one vendor of the permitted "[c]ity approved Radio Box" actually exists, located in Wilbraham, a town located near Springfield. If so, the ordinance may also depart from the statutory purpose of avoiding "unwarranted preferential treatment of . . . products." G. L. c. 143, § 95 (*c*).

[16]According to the city's submissions, by mandating this "[c]ity approved Radio Box," the city is attempting to circumvent third-party relay of fire alarms and thereby increase response times. We are not indifferent to the city's concerns. The Legislature, however, has placed in the board the responsibility for determining, on a Statewide basis, what "fire protective signaling systems and automatic fire detection systems" are permitted in Massachusetts. The board has provided building owners throughout the Commonwealth with a choice from among four specified systems, a reflection of its judgment that all four options sufficiently protect public safety. Pursuant to the statute, the board has an obligation to "make a continuing study of the operation of the [code] . . . to ascertain [its] effect upon the cost of building construction and the effectiveness of [its] provisions for health, safety, energy conservation and security." G. L. c. 143, § 94 (*c*). The board, which by statute must include the State fire marshal and the head of a municipal fire department, see G. L. c. 143, § 93, is best able to balance these objectives. Because of this expertise, the Legislature has delegated such decisions to the board, and we will neither second guess its determinations ourselves nor allow municipalities to do so.

But the city is not without recourse. First, it could avail itself of the statutory mechanism described above, G. L. c. 143, § 98, and request that the board allow it to utilize a more restrictive standard. Second, the city "may propose amendments to the state building code," which "shall" be considered at public hearings held twice annually. G. L. c. 143, § 97. Third, the city could pursue direct action in the Legislature to change the code.

Statewide standards in this area. See *id.* Whether construing the Legislature's stated intention of ensuring uniformity in building regulations either as an explicit statement of its desire to foreclose local action, or as a statutory purpose that would be frustrated thereby, the ordinance cannot stand.[17]

If all municipalities in the Commonwealth were allowed to enact similarly restrictive ordinances and bylaws, a patchwork of building regulations would ensue. Other sections of the code also provide alternative means of compliance.[18] Allowing the city's ordinance to stand would permit a similar narrowing of options in such sections, sanctioning the development of different applicable building codes in each of the Commonwealth's 351 cities and towns, precisely the result that promulgation of the code was meant to foreclose.

*Judgment affirmed.*

---

[17]There is no merit to the city's contention that the ordinance is no more restrictive than the code because it merely narrows the permissible options among State-approved alternatives. See *Connors* v. *Boston*, 430 Mass. 31, 38 (1999) (rejecting argument that State law requires only "floor" as opposed to "ceiling" health coverage). By establishing the board, the Legislature intended to ensure Statewide uniformity in building practices. The board, in turn, has approved four "fire protective signaling systems and automatic fire detection systems" for use in buildings in the Commonwealth. The city's argument elides the fact that, by permitting only one of the State-approved options, it has also foreclosed three other such options. The facts of this case demonstrate the inconsistency of the city ordinance with the code: the code permits the church's system and the ordinance does not.

[18]For example, the code allows roofs of one-family and two-family residences to be made of at least eight different materials, 780 Code Mass. Regs. §§ 5905.1-5905.11 (2010), and allows a choice of among six materials for their exterior siding. 780 Code Mass. Regs. §§ 5703.00 (2010).