NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-799                                        Appeals Court

     JOHN R. HANLON, JR.  vs.  TOWN OF SHEFFIELD & others.[1]


                        No. 15-P-799.

        Suffolk.     March 7, 2016. - May 13, 2016.

        Present:  Kafker, C.J., Katzmann, & Grainger, JJ.


Zoning, Private airstrip, Validity of by-law or ordinance.
     Statute, Construction.  Municipal Corporations, By-laws and
     ordinances.



     Civil action commenced in the Land Court Department on
March 21, 2012.

     The case was heard by Howard P. Speicher, J., on a motion
for summary judgment.


     Alexandra H. Glover for the plaintiff.
     Peter Sacks, State Solicitor, for Department of
Transportation, amicus curiae.


     GRAINGER, J.  The plaintiff John R. Hanlon, Jr., appeals

from summary judgment entered in favor of the defendants, ruling

that the town of Sheffield (town) was authorized to regulate the

_____

     [1] Zoning board of appeals of Sheffield and building
inspector/zoning enforcement officer of Sheffield.

plaintiff's use of his property as a private noncommercial aircraft landing area notwithstanding the regulatory authority of the Massachusetts Department of Transportation aeronautics division (division).[2]  In reversing the judgment we acknowledge that the motion judge was confronted, as are we, with statutory language in G. L. c. 90, § 39B, that undermines the evident purpose of the statute, and we note that this is an appropriate subject for corrective legislation.[3]

Background.  The facts are undisputed.  The plaintiff owns approximately thirty-eight acres of land (property) in the town, containing the plaintiff's residence and a number of outbuildings suitable for storage of small airplanes.  On the property, the plaintiff created a strip eighty feet wide by 1,250 feet long for takeoff and landing of airplanes and, since at least 2006, has operated aircraft from the property as a hobby.  In 2006, the plaintiff registered the property with the Federal Aviation Administration as a helipad.  Pursuant to G. L. c. 90, § 39B, fourth par., he also registered the property as a

---

[2] The Transportation Reform Act of 2009, St. 2009, c. 25, transferred to the division the powers and duties of the former Massachusetts Aeronautics Commission and additionally changed the definition of "Commission" in the statute to the division. G. L. c. 90, § 35(m).  For the sake of consistency, we refer only to the division regardless of which entity was in power at the time.

[3] We acknowledge the amicus brief and participation in oral argument on behalf of the plaintiff by the State Solicitor.

noncommercial private restricted landing area (PRLA) with the division.  He neither sought nor received any approval from the town with respect to the PRLA.

The property is located in a rural district under the town zoning by-law.  Section 3.1 of the by-law provides that land may not be "used except as set forth in the . . . Table of Use Regulations."  The section further provides that "[a]ny . . . use of premises not herein expressly permitted is hereby prohibited."  Although "commercial airfield" is listed as a prohibited use in rural districts, the Table of Use Regulations contains no mention of noncommercial or private airfields.

In a letter dated November 15, 2011, the town's building commissioner/zoning enforcement officer ordered the plaintiff to cease and desist from using the PRLA on the property as such use was not "set forth" in § 3.1 of the by-law, and was therefore prohibited.  The plaintiff appealed the cease and desist order to the town zoning board of appeals (board), which held hearings on four dates.[4]  The board upheld the cease and desist order, and the plaintiff appealed the decision to the Land Court.  In the Land Court, the plaintiff both appealed the board's decision, see G. L. c. 40A, § 17, and sought a determination that the by-law provision was invalid, see G. L. c. 240, § 14A, insofar as

_____

[4] Hearings were held on January 19, 2012, January 26, 2012, February 6, 2012, and February 28, 2012.

it purports to regulate the use of the property for aircraft, because the town never submitted it to the division for approval.  On the plaintiff's motion for summary judgment, the judge held in favor of the town, declaring the by-law provision valid and enforceable to prohibit the plaintiff's use of the property as a PRLA.

Discussion.  The issue at hand is whether G. L. c. 90, § 39B, fifth par., read in conjunction with the section's preceding fourth paragraph, allows a municipality to ban noncommercial PRLAs without prior approval from the division. "We review questions of statutory interpretation de novo." Commerce Ins. Co. v. Commissioner of Ins., 447 Mass. 478, 481 (2006).  However, "[o]ur primary duty in interpreting a statute is to effectuate the intent of the Legislature in enacting it. . . .  Where the meaning of a statute is not plain from its language, we consider the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Water Dept. of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010) (quotations and citations omitted).  In doing so, "[w]e give substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration enforcement."  Commerce Ins. Co. v. Commissioner of Ins., supra.

Section 39B, added to the General Laws by St. 1946, c. 607, § 1, governs division approval of municipal airport sites and restricted landing areas and details the procedure for receiving a certificate of approval from the division.[5]  The fifth paragraph of § 39B, inserted by St. 1985, c. 30, requires that a municipality making any rule, regulation, ordinance or by-law "relative to the use and operation of aircraft on said airport or restricted landing area," receive approval from the division prior to the rule's taking effect.  The language of the fifth paragraph applies to all landing facilities; it does not distinguish between commercial landing areas and private noncommercial landing areas.[6]  Therefore, if the fifth paragraph is applicable in these circumstances, the town's cease and desist order is invalid, because the by-law provision on which it is based has not been approved by the division.

---

[5] The first version of the statute passed in 1946 consisted of current paragraphs 1, 3, 4, and 6.  Two years later, the second paragraph was added. In 1985, thirty-nine years thereafter, the fifth paragraph was added.

[6] The full text of the fifth paragraph states:

"A city or town in which is situated the whole or any portion of an airport or restricted landing area owned by a person may, as to so much thereof as is located within its boundaries, make and enforce rules and regulations relative to the use and operation of aircraft on said airport or restricted landing area. Such rules and regulations, ordinances or by-laws shall be submitted to the [division] and shall not take effect until approved by the [division]."

However, the fourth paragraph of § 39B, already in effect at the time the fifth paragraph was enacted, contains the following introductory clause: "This section shall not apply to restricted landing areas designed for non-commercial private use . . ." (emphasis added). Read literally, this wording exempts noncommercial private landing areas from every provision contained in all six paragraphs of § 39B, whether the provision was enacted at the same time or almost four decades after the fourth paragraph.

The application of the fourth paragraph to the fifth paragraph of § 39B creates a serious incongruity. The fifth paragraph is a legislative delegation to the division to approve or disapprove municipal ordinances and by-laws regulating an "airport or restricted landing area owned by a person."[7] The statute as a whole contains no other provision that refers to any municipal power to regulate private noncommercial landing areas other than the language in § 39B, fifth par. The fifth paragraph allows for division review of such municipal rules and regulations, and thereby implies the permissibility of those rules and regulations in the first place.

---

[7] See G. L. c. 90, § 35(o), as amended by St. 1946, c. 507 (defining "Person" as "any individual, firm, partnership, corporation, company, association, joint stock association; and [including] any trustee, receiver, assignee or other similar representative thereof"). This simply details varieties of private ownership.

As a result, were we to apply the exemption of the fourth paragraph of § 39B to the fifth paragraph, it would eliminate the only statutory basis for a town's regulation of private noncommercial landing areas. Otherwise stated, our choice is to interpret the statute to require town regulation of private noncommercial landing areas to be subject to division approval or, alternatively, to declare that there is no basis for any municipal regulation at the outset. To avoid the latter outcome, we read the word "section" in the fourth paragraph to apply to the preceding paragraphs, but not to the fifth paragraph. See, e.g., Commonwealth v. Neiman, 396 Mass. 754, 757-758 (1986) (use of "this section" in fourth paragraph of G. L. c. 94C, § 32A, held to apply only to immediately preceding subsection).

This interpretation resolves additional discrepancies with related sections of G. L. c. 90. For example, G. L. c. 90, § 39, as appearing in St. 1948, c. 637, § 10, sets forth the express legislative grant of "general supervision and control over aeronautics" to the division. This wording is difficult to reconcile with an unreviewable assignment of one portion of the same regulatory authority to cities and towns. General, not limited, "supervision and control" is delegated to the division specifically

"for the purpose of protecting and insuring the general public interests and safety, and the safety of persons receiving instructions concerning, or operating or using, aircraft and of persons and property being transported in aircraft, and for the purpose of developing and promoting aeronautics within the commonwealth . . . ."

G. L. c. 90, § 39, fourth par., as amended by St. 1946, c. 583, § 3. Likewise, § 40 of c. 90, as amended by St. 1946, c. 582, § 1, reinforces the breadth of jurisdiction delegated to the division by the Legislature. The division is authorized and directed to "foster air commerce and private flying within the commonwealth and for such purpose shall: (a) encourage the establishment of airports and air navigation facilities and the development of education in aeronautics."

On the infrequent occasions when we are presented with this level of statutory incongruity, our cases instruct "that we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history." Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986). Libertarian Assn. of Mass. v. Secretary of the Commonwealth, 462 Mass. 538, 551 (2012). We "are not foreclosed by faulty or imprecise draftsmanship from giving statutes and ordinances a practical and reasonable construction." Advanced Dev. Concepts, Inc. v. Blackstone, 33 Mass. App. Ct. 228, 232 (1992). Cf. Reade v Secretary of the Commonwealth, 472 Mass. 573, 584 (2015).

We therefore conclude that this case "presents one of those rare instances in which a court must overcome its reluctance to supply word or words which were not employed by the Legislature . . . in order to render a statute intelligible and so effectuate its obvious intent." Watros v. Greater Lynn Mental Health & Retardation Assn., Inc. 421 Mass. 106, 114 n.3 (1995) (quotation and citation omitted). Accordingly, we interpret the word "section" in the fourth paragraph of G. L. c. 90, § 39B, to refer to those provisions of the § 39B in effect at the time the fourth paragraph was added to the statute in 1946, but not to the fifth paragraph, here at issue, which was added to the statute in 1985, almost four decades later. As a result, any part of § 3.1 of the town zoning by-law that purports to regulate "the use and operation of aircraft on [an] airport or restricted landing area" cannot take effect until "submitted to the [division] and . . . until approved by the [division]."

The judgment is reversed and the matter is remanded to the Land Court for entry of a new judgment consistent with this opinion.

                              So ordered.