NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12278


ROMA, III, LTD. vs.  BOARD OF APPEALS OF ROCKPORT.



Suffolk.    September 6, 2017. - January 8, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Budd, Cypher, & Kafker,
JJ.



Municipal Corporations, By-laws and ordinances.  Zoning,
    Validity of by-law or ordinance, Private landing area.
    Federal Preemption.




Civil action commenced in the Land Court Department on
March 12, 2015.

The case was heard by Robert B. Foster, J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.


Jackie Cowin for the defendant.
Nicholas Preston Shapiro (Robert K. Hopkins also present)
for the plaintiff.
Maura Healy, Attorney General, & Elizabeth N. Dewar, State
Solicitor, for division of aeronautics of the Department of
Transportation, amicus curiae, submitted a brief.


GANTS, C.J.  A judge of the Land Court barred the town of

Rockport (town) from enforcing a zoning bylaw that prohibited

the use of land for a private heliport without some form of approval, variance, or special permit because the bylaw had not been approved by the division of aeronautics of the Department of Transportation (division). The issue on appeal is whether cities and towns may exercise their zoning authority to determine whether land in their communities may be used as a noncommercial private restricted landing area, here a heliport, or whether they may do so only with the approval of the division because the exercise of such zoning authority is preempted by the State's aeronautics statutes, G. L. c. 90, §§ 35-52 (aeronautics code). We hold that there is no clear legislative intent to preempt local zoning enactments with respect to noncommercial private restricted landing areas, and that a city or town does not need the prior approval of the division to enforce a zoning bylaw that requires some form of approval, variance, or special permit for land to be used as a private heliport.[1]

Background. Roma, III, Ltd. (plaintiff), is the owner of 1.62 acres of oceanfront property in Rockport (property). The property, improved by a single-family residence, is located in

---

[1] We acknowledge the amicus brief submitted by the division of aeronautics of the Department of Transportation (division). We also note that, although G. L. c. 90, §§ 35-52 (aeronautics code), makes reference to the "commission," the Transportation Reform Act of 2009, St. 2009, c. 25, § 150 (4), transferred the powers and duties of the former aeronautics commission to the division.

what is classified as a residential A zoning district.

Ron Roma (Roma) is licensed as a helicopter pilot and regularly uses the helicopter he owns to travel to his various family homes, business engagements, and other activities. Roma does not operate his helicopter for any commercial purpose. In September, 2013, following Roma's request for a determination of airspace suitability for a private helicopter landing area on the property, the Federal Aviation Administration recognized the property as a licensed private use heliport. Roma also received approval following an airspace review from the division. The heliport on the property is a flat section of lawn near the ocean with a windsock installed to indicate the direction of the wind. Roma stores his helicopter in a hangar located at the Beverly Airport.

On November 14, 2014, Roma flew his helicopter to the property. Later that month, the town building inspector issued an enforcement order stating that "a heliport is not allowed, either as a principal use of the property or an accessory use, in any zoning district in the [t]own," and that the use of the property for the landing of a helicopter is in violation of the town's bylaw. The town building inspector ordered "that the landing of helicopters on the property be stopped immediately" and that the "[f]ailure to comply with this order may result in fines of up to $300 per day."

The plaintiff filed an appeal from the enforcement order to the board of appeals of Rockport (board). After a public hearing, the board voted unanimously to deny the appeal. It later issued a written decision noting that, under § I.B of the town zoning bylaw, uses that are not expressly permitted are deemed prohibited. That section states that "[n]o parcel of land in any district shall be used for any purpose other than those authorized for the district in which it is located." The board found that, because neither the table of permitted uses in § III.B of the bylaw nor any other section of the bylaw authorizes the use of land for a heliport, the private heliport on the plaintiff's land was not permitted. Nor, the board concluded, is the heliport allowed as a "customarily incidental" accessory use or as an accessory use normally associated with a one-family detached dwelling that is not detrimental to a residential neighborhood. Consequently, the heliport would require "some form of approval, variance and/or special permit" after a separate hearing. The board found that "[h]elicopter landings in a dense[,] village-style neighborhood are neither a minor nor an insignificant event" and that "[t]he vibration and noise resounding in this neighborhood[,] even when an over-ocean approach path would be utilized would, in the judgment of this [b]oard, be detrimental."

The plaintiff filed a timely complaint appealing from the

board's decision to the Land Court, followed by two amended complaints, and the parties thereafter cross-moved for summary judgment. The judge concluded that he was "constrained to apply" the Appeals Court's holding in Hanlon v. Sheffield, 89 Mass. App. Ct. 392 (2016), which interpreted G. L. c. 90, § 39B, to indicate that a town may not enforce a zoning bylaw that would prohibit a private landowner from creating a noncommercial private restricted landing area on his or her property, unless the relevant bylaw had been approved by the division.[2] Because the town zoning bylaw had not been approved by the division, the judge granted summary judgment to the plaintiff.[3] We granted the board's application for direct appellate review.

Discussion. Because the judge concluded that his decision was dictated by the controlling authority in Hanlon, which interpreted § 39B, we begin by discussing that statute. Section 39B, as enacted in 1946, consisted of what currently comprises the first, third, fourth, and sixth paragraphs of the statute, followed shortly thereafter by the insertion of the second paragraph in 1948. In essence, as relevant here, the first through third paragraphs provide that, before a city or town

---

[2] The judge noted that the decision in Hanlon v. Sheffield, 89 Mass. App. Ct. 392 (2016), "may merit revisiting."

[3] Because he granted the motion for summary judgment filed by Roma, III, Ltd. (plaintiff), based on the holding in Hanlon, the judge did not reach the other claims advanced by the plaintiff.

acquires any property to construct, enlarge, or improve "an

airport[4] or restricted landing area,"[5] it must first apply to

the division for a certificate of approval of the site.

However, the fourth paragraph of § 39B provides:

> "This section shall not apply to restricted landing
> areas designed for non-commercial private use, nor to any
> airport, restricted landing area or other air navigation
> facility owned or operated within the commonwealth by the
> federal government; provided, that each person[6]
> constructing or maintaining a restricted landing area for
> non-commercial private use shall so inform the [division]
> in writing; and provided, further, that such person shall
> construct and maintain said restricted landing area in such
> manner as shall not endanger the public safety."

As a result of the fourth paragraph, a private landowner who

wishes to establish a noncommercial private restricted landing

area does not need prior division approval; the landowner simply

needs to inform the division in writing of its establishment,

---

[4] An "[a]irport" is defined as "any area of land or water
other than a restricted landing area, which is used, or intended
for use, for the landing and take-off of aircraft, and any
appurtenant areas which are used, or intended for use, for
airport buildings or other airport facilities or rights-of-way,
together with all airport buildings and facilities located
thereon."  G. L. c. 90, § 35 (e).

[5] A "[r]estricted landing area" is defined as "any area of
land or water other than an airport which is used, or is made
available, for the landing and take-off of aircraft; provided,
that the use of such an area may be restricted from time to time
by the [division]."  G. L. c. 90, § 35 (f).

[6] A "[p]erson" is defined as "any individual, firm,
partnership, corporation, company, association, joint stock
association; and includes any trustee, receiver, assignee or
other similar representative thereof."  G. L. c. 90, § 35 (o).
This definition excludes cities, towns, and other government
entities.

and ensure that it is not built or maintained in a manner that would endanger the public safety.

In 1985, § 39B was amended to add a fifth paragraph, which provides:

> "A city or town in which is situated the whole or any portion of an airport or restricted landing area owned by a person may, as to so much thereof as is located within its boundaries, make and enforce rules and regulations relative to the use and operation of aircraft on said airport or restricted landing area.  Such rules and regulations, ordinances or [bylaws] shall be submitted to the [division] and shall not take effect until approved by the [division]."

Under this provision, a city or town may enact rules and regulations governing "the use and operation of aircraft" at an airport or restricted landing area, but these rules and regulations cannot become effective until the division has approved them.  On its face, the fifth paragraph applies to all restricted landing areas; unlike the fourth paragraph, it is not limited to noncommercial private restricted landing areas. However, because the fourth paragraph declares that "[§ 39B] shall not apply to restricted landing areas designed for non-commercial private use," the defendants in Hanlon and the board here contended that the language of the fifth paragraph that requires division approval of all "rules and regulations relative to the use and operation of aircraft on said . . . restricted landing area" does not apply to noncommercial private restricted landing areas.

The Appeals Court in Hanlon, 89 Mass. App. Ct. at 396-397, rejected this argument, interpreting § 39B to require prior division approval before any city or town regulation "relative to the use and operation of aircraft" on a noncommercial private restricted landing area becomes effective. The Appeals Court reasoned that the sole source of a town's authority to regulate the use and operation of aircraft derives from the fifth paragraph of § 39B; consequently, if the fourth paragraph eliminated this authority with respect to noncommercial private restricted landing areas, the town would have no authority to regulate the use and operation of aircraft in these areas. Id. at 395. According to the Appeals Court, its decision declining to interpret the fourth paragraph as removing this authority conserved the authority granted to the town under the fifth paragraph by allowing it to regulate the use and operation of aircraft in noncommercial private restricted landing areas, albeit subjecting that regulation to prior division approval. Id.

The flaw in this reasoning is that, under the zoning bylaw in the town of Sheffield, land may not be used as a noncommercial private restricted landing area without specific zoning board approval in the form of a variance or special permit, which Hanlon had not obtained. The relevant question in Hanlon, therefore, was not whether a city or town may regulate

"the use and operation of aircraft" on what was already a noncommercial private restricted landing area.  Rather, the relevant question was whether a city or town may regulate the use of land within its community through a zoning bylaw, and therefore determine whether a private landowner may use his or her land to establish a noncommercial private restricted landing area.  In short, what was at issue in Hanlon was not the "use and operation of aircraft," the regulation of which was governed by § 39B, but the use of land, the regulation of which has traditionally been within the domain of cities and towns through their zoning authority.  Accordingly, regardless of whether § 39B is the sole source of a city or town's authority to regulate the "use and operation of aircraft," it plainly is not the source of a city or town's authority to regulate the use of land.[7]

The Legislature has long bestowed broad authority on cities and towns to regulate the use of land through various zoning enactments.  See generally M. Bobrowski, Handbook of Massachusetts Land Use and Planning Law § 2.03 (3d ed. 2011).  Article 89 of the Amendments to the Massachusetts Constitution, ratified in 1966 and known as the Home Rule Amendment, provides

---

[7] We note that the town of Sheffield did not advance any arguments on appeal in Hanlon and that no party in that case argued that the town's authority to determine whether land may be used as a noncommercial private restricted landing area rested within its traditional zoning authority.

that "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court." Art. 89, § 6, of the Amendments to the Massachusetts Constitution. See G. L. c. 43B, § 13 (Home Rules Procedures Act, which implements Home Rule Amendment). See also Board of Appeals of Hanover v. Housing Appeals Comm., 363 Mass. 339, 359 (1973) ("zoning power is one of a city's or town's independent municipal powers included in [the Home Rule Amendment's] broad grant of powers to adopt ordinances or by-laws for the protection of the public health, safety, and general welfare"). The authority of cities and towns to enact zoning bylaws, however, predates the adoption of the Home Rule Amendment. In 1954, the Legislature enacted the Zoning Enabling Act, which, among other things, granted cities and towns the power to restrict the use, location, and construction of buildings through their enactment of ordinances or bylaws. See G. L. c. 40A, §§ 1-22, inserted by St. 1954, c. 368, § 2. Under G. L. c. 40A §§ 1-17 (Zoning Act), which replaced its predecessor in 1975, "[a] municipality may enact zoning provisions to deal with a variety of matters, including fire safety; density of population and intensity of use; the adequate provision of water, water supply, and sewerage; the conservation

of natural resources; and the prevention of pollution of the environment."  Sturges v. Chilmark, 380 Mass. 246, 253 (1980).  See St. 1975, c. 808, § 2A.  "From the wide scope of the purposes of [t]he Zoning Act, it is apparent that the Legislature intended to permit cities and towns to adopt any and all zoning provisions which are constitutionally permissible, subject, however, to limitations expressly stated in that act (see, e.g., G. L. c. 40A, § 3) or in other controlling legislation."  Sturges, supra.  In fact, the breadth of the zoning power is reflected in the definition of the term "[z]oning" in the Zoning Act:  "ordinances and by-laws, adopted by cities and towns to regulate the use of land, buildings and structures to the full extent of the independent constitutional powers of cities and towns to protect the health, safety and general welfare of their present and future inhabitants."  G. L. c. 40A, § 1A.

We have previously recognized the authority of a town, through its zoning bylaw, to prohibit a noncommercial private restricted landing area, albeit in a case where the division was not a party and where the issue of preemption was not raised.  In Harvard v. Maxant, 360 Mass. 432, 433, 435-436, 440 (1971), we affirmed a town's application of its local zoning bylaw to prohibit a landowner from using his property in a residential-agricultural district as a private landing strip for aircraft

owned by him and his son.  We concluded that a private landing strip, if considered the primary use of the land, was not a permissible use in that zoning district, id. at 436, and was not "customarily incidental" to the permissible residential use. Id. at 437-440.

The plaintiff contends, however, that, unless approved in advance by the division, the town's zoning bylaw that prohibits the use of land to establish a noncommercial private restricted landing area is barred by State preemption doctrine because the Legislature, in enacting the statutes that comprise the aeronautics code, G. L. c. 90, §§ 35-52, intended to preclude this exercise of local zoning power.  Although the plaintiff does not contend that Federal preemption bars enforcement of the town's bylaw, our preemption analysis begins there because it is important to recognize what spheres in the realm of aeronautics are, and are not, exclusively governed by Federal regulation.

1.  Federal preemption.  The doctrine of preemption originates from the supremacy clause of the United States Constitution, which provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . ." U.S. Const., art. VI, cl. 2.  See Chadwick v. Board of Registration in Dentistry, 461 Mass. 77, 84 (2011).  "A Federal statute may preempt State law when it explicitly or by

implication defines such an intent, or when a State statute actually conflicts with Federal law or stands as an obstacle to the accomplishment of Federal objectives." Boston v. Commonwealth Employment Relations Bd., 453 Mass. 389, 396 (2009). See Hoagland v. Clear Lake, Ind., 415 F.3d 693, 696 (7th Cir. 2005), cert. denied, 547 U.S. 1004 (2006) (identifying "three ways in which [F]ederal law can preempt [S]tate and local law: express preemption, conflict [or implied] preemption, and field [or complete] preemption"). The critical question in preemption analysis is whether Congress intended Federal law to supersede State law, see Bay Colony R.R. Corp. v. Yarmouth, 470 Mass. 515, 518 (2015), but unless Congress's intent to do so is clearly manifested, we do not presume that Congress intended to displace State law on a particular subject. See Boston, supra.

Under the Federal Aviation Act of 1958 (FAA), 49 U.S.C. §§ 40101 et seq., "[t]he United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). "The Administrator of the Federal Aviation Administration shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace." 49 U.S.C. § 40103(b)(1). Federal courts have found preemption in matters pertaining to aircraft noise and aircraft safety, concluding that Federal regulation is

too pervasive in these areas to permit regulation at the State or local level.  See, e.g., Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 633 (1973); Abdullah v. American Airlines, Inc., 181 F.3d 363, 367 (3d Cir. 1999); French v. Pan Am Express, Inc., 869 F.2d 1, 6-7 (1st Cir. 1989); Pirolo v. Clearwater, 711 F.2d 1006, 1009-1010 (11th Cir. 1983); San Diego Unified Port Dist. v. Gianturco, 651 F.2d 1306, 1316 (9th Cir. 1981), cert. denied sub nom. Department of Transp. v. San Diego Unified Port Dist., 455 U.S. 1000 (1982).

Federal case law, however, has distinguished the preempted regulation of flight operations from the permitted regulation of aircraft landing sites.  In Gustafson v. Lake Angelus, 76 F.3d 778, 783 (6th Cir.), cert. denied, 519 U.S. 823 (1996), the court upheld a municipal ordinance prohibiting seaplanes from landing on a lake, reasoning that Federal regulation of airspace and the regulation of aircraft in flight is distinct from the regulation of the designation of aircraft landing sites, "which involves local control of land . . . use."  Similarly, in Condor Corp. v. St. Paul, 912 F.2d 215, 219 (8th Cir. 1990), the court upheld a municipal land use decision denying a permit for the operation of a heliport, concluding that there was "no conflict between a city's regulatory power over land use, and the [F]ederal regulation of airspace."  See Hoagland, 415 F.3d at 696-697 (town zoning ordinance designating heliport as special

use requiring special permission of zoning board of appeals not preempted by FAA); Faux-Burhans v. County Comm'rs of Frederick County, 674 F. Supp. 1172, 1174 (D. Md. 1987), aff'd, 859 F.2d 149 (4th Cir. 1988), cert. denied, 488 U.S. 1042 (1989) ("no [F]ederal law gives a citizen the right to operate an airport free of local zoning control"). Within the Federal aviation framework, land use matters are "intrinsically local," Gustafson, 76 F.3d at 784, and the zoning of a heliport "remains an issue for local control." Hoagland, 415 F.3d at 697.

2. State preemption. State preemption analysis is similar to Federal preemption analysis in that we determine whether the Legislature intended to preclude local action, recognizing that "[t]he legislative intent to preclude local action must be clear" (citation omitted). Wendell v. Attorney Gen., 394 Mass. 518, 523 (1985). See Bloom v. Worcester, 363 Mass. 136, 155 (1973) (in determining under Home Rule Amendment whether local ordinance or bylaw is "not inconsistent" with any statute, "the same process of ascertaining legislative intent must be performed as has been performed in the Federal preemption cases"). Legislative intent may be "express or inferred," that is, "local action is precluded either where the 'Legislature has made an explicit indication of its intention in this respect,' or where 'the purpose of State legislation would be frustrated [by a local enactment] so as to warrant an inference that the

Legislature intended to preempt the field.'"  St. George Greek
Orthodox Cathedral of W. Mass., Inc. v. Fire Dep't of
Springfield, 462 Mass. 120, 126 (2012), quoting Wendell, supra
at 524.  "[A] local regulation will not be invalidated unless
the court finds a 'sharp conflict' between the local and State
provisions."  Doe v. Lynn, 472 Mass. 521, 526 (2015), quoting
Easthampton Sav. Bank v. Springfield, 470 Mass. 284, 289 (2014).

The plaintiff does not contend that the Legislature, in
enacting the aeronautics code, explicitly indicated its intent
to preempt local zoning enactments concerning noncommercial
private restricted landing areas.[8]  Instead, the plaintiff argues
that we should infer a clear intent to preempt such local zoning
enactments to prevent frustration of the legislative purpose of
the aeronautics code, except where a city or town obtains
division approval of the enactment.  Consequently, we must
determine whether "the local enactment prevents the achievement
of a clearly identifiable [legislative] purpose."  Wendell, 394
Mass. at 524.  Where there is no express legislative intent to
preempt, "[i]f . . . the State legislative purpose can be
achieved in the face of a local by-law on the same subject, the

_____

[8] As an example of explicit or express preemption, see 49
U.S.C. § 41713(b)(1) ("Except as provided in this subsection, a
State, political subdivision of a State, or political authority
of at least [two] States may not enact or enforce a law,
regulation, or other provision having the force and effect of
law related to a price, route, or service of an air carrier that
may provide air transportation under this subpart").

local by-law is not [held to be] inconsistent with the State legislation."  Id.

Under the aeronautics code, the division has "general supervision and control over aeronautics."  G. L. c. 90, § 39. "Aeronautics" is defined to include, among other things, "transportation by aircraft; the operation . . . of aircraft . . . ; [and] the design, establishment, construction, extension, operation, improvement, repair or maintenance of airports, restricted landing areas or other air navigation facilities."  G. L. c. 90, § 35 (a).  The purpose of the division is to "foster air commerce and private flying within the [C]ommonwealth."  G. L. c. 90, § 40.  To advance this purpose, the division, among other things, "shall . . . encourage the establishment of airports and air navigation facilities."  Id.  The division is required to "prepare and revise from time to time a plan for the development of airports and air navigation facilities in the [C]ommonwealth."  G. L. c. 90, § 39A.  "Such plan shall specify, in terms of general location and type of development, the projects considered by the [division] to be necessary to provide a system of airports adequate to anticipate and meet the needs of civil aeronautics within the [C]ommonwealth."  Id.  The division, subject to appropriation by the Legislature, also may "construct, establish and maintain air navigational facilities within the

[C]ommonwealth," and may take, by eminent domain, the property needed to do so. Id.

Section 39B provides that no city or town may acquire property for the purpose of constructing or enlarging an airport or restricted landing area without the division's approval of the site. See G. L. c. 90, § 39B. However, § 39B also provides that no such approval is required where a private landowner seeks to create a noncommercial private restricted landing area. Id. All that is required is that the person constructing or maintaining this type of landing area notify the division in writing and operate the landing area in a manner that does not jeopardize the public safety. Id. Under the aeronautics code, as long as safety is not threatened, it is inconsequential whether the noncommercial private restricted landing area is located in a densely populated residential neighborhood, or whether noise, vibrations, fumes, dust, and wind arising from a heliport will interfere with the neighbors' enjoyment of their property. Consequently, if local zoning bylaws are preempted by the aeronautics code, a city or town will be unable to protect its residents from any of the potential harms and deleterious consequences that may arise from the location of a noncommercial private restricted landing area, unless the division agrees to the proposed restriction. The plaintiff (and the division in its amicus brief) contend that, if cities and towns are allowed

without division approval to enact zoning bylaws that will prevent private landowners from establishing noncommercial private restricted heliports or landing areas on their property, the division's legislative mandate, under G. L. c. 90, § 40, to "foster . . . private flying within the [C]ommonwealth" will be so frustrated that we can infer a legislative intent to prohibit such zoning restrictions. We are not persuaded by this argument for two reasons.

First, the legislative purpose of "foster[ing] . . . private flying" does not suggest a legislative intent to encourage the development of private heliports and landing areas so that persons may land their helicopters and aircraft on their own private property. The Legislature, in directing the division to prepare and revise plans for the development of airports and air navigation facilities in the Commonwealth, specifically required that the plan focus on projects needed "to provide a system of airports" adequate to meet the needs of civil aeronautics. See G. L. c. 90, § 39A. The Legislature did not direct the division to focus on providing a system of noncommercial private restricted landing areas to meet those needs. This suggests that the Legislature recognized that private flying may be effectively fostered through the construction and expansion of airports and, perhaps, commercial restricted landing areas; the record is devoid of any suggestion

that the Legislature considered noncommercial private restricted landing areas to be necessary, or even central, to the division's mission of fostering private flying.  Therefore, even if every city and town were to enact zoning bylaws that would prohibit the use of land for noncommercial private restricted landing areas without some form of approval, variance, or special permit, and even if this were to cause some persons to cease private flying if they cannot land their helicopter or aircraft on their own property, this consequence is insufficient to warrant a finding of preemption where it would not significantly impair the State's legislative purpose of fostering private flying.  See Bloom, 363 Mass. at 156 (existence of legislation on subject "is not necessarily a bar to the enactment of local ordinances and by-laws" affecting that subject if State legislative purpose can still be achieved).

Second, in determining whether the Legislature intended to preempt local ordinances and bylaws, it is appropriate to consider whether the subject matter at issue has traditionally been a matter of local regulation.  See Easthampton Sav. Bank, 470 Mass. at 289, citing Wendell, 394 Mass. at 525.  Where land use regulation has long been recognized by the Legislature to be a prerogative of local government, we will not infer that the enactment of the aeronautics code reflects a clear legislative intent to preempt all local zoning bylaws that might affect

noncommercial private restricted landing areas based on the risk of frustrating the legislative purpose of fostering private flying.

Nor are we persuaded that the Legislature, by granting the division "general supervision and control over aeronautics," G. L. c. 90, § 39, intended to preempt all local land use regulation that might affect the use of land for private heliports. If local zoning authorities must depend on division approval to protect their residents from the types of harm or nuisances that might arise from the establishment of a noncommercial private restricted landing area, cities and towns will be unable to ensure that their residents will be adequately protected from these harms and nuisances. If the Legislature wishes to preempt local zoning regarding noncommercial private restricted landing areas, it must provide a clearer indication of such intent.[9]

Conclusion. For the reasons stated, the judgment below is vacated and the matter is remanded to the Land Court for further proceedings consistent with this opinion.

So ordered.

---

[9] Nothing in this opinion is intended to disturb either the notice and safety requirements for noncommercial private restricted landing areas mandated under G. L. c. 90, § 39B, fourth par., or the continuing authority of the division under the aeronautics code over aircraft landing areas that do not fall within the narrow definition of a noncommercial private restricted landing area.