NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13434

SIX BROTHERS, INC.,[1] & others[2] vs. TOWN OF BROOKLINE & another.[3]


Norfolk.     November 6, 2023. - March 8, 2024.

Present:  Budd, C.J., Gaziano, Lowy, Kafker, Wendlandt, & Georges, JJ.[4]


Tobacco.  Municipal Corporations, By-laws and ordinances. Constitutional Law, Municipalities, Equal protection of laws. Statute, Construction.  Practice, Civil, Motion to dismiss.


Civil action commenced in the Superior Court Department on September 17, 2021.

A motion to dismiss was heard by Brian A. Davis, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

---

[1] Doing business as Brookline Sunoco.

[2] Fahd Iqbal; IPGG, Inc., doing business as One Stop Market; Sukhjinder Gill; Comm. Ave. Gas & Service, Inc., doing business as Commonwealth Mobil; Emile Heraiki; OMR Corporation, doing business as Village Mobil; and Elias Audy.

[3] Select board of Brookline.

[4] Justice Lowy participated in the deliberation on this case prior to his retirement.

Patrick C. Tinsley (Adam C. Ponte also present) for the plaintiffs.

Christopher N. Banthin (Mark Gottlieb also present) for the defendants.

The following submitted briefs for amici curiae:

Nicholas A. Ogden, Assistant Attorney General, for the Commonwealth.

Christopher M. Morrison for American Snuff Company, LLC.

Mina S. Makarious, Christina S. Marshall, & Matthew R. Bowser for American Cancer Society Cancer Action Network & others.

WENDLANDT, J.  In 2018, as part of a larger act entitled "An Act protecting youth from the health risks of tobacco and nicotine addiction," St. 2018, c. 157 (Tobacco Act or act), the Legislature prohibited the sale of tobacco products in the Commonwealth to persons under the age of twenty-one, thereby raising the minimum age for such sales from eighteen.  See G. L. c. 270, § 6 (b), as appearing in St. 2018, c. 157, § 9.  The act expressly preempts any "inconsistent, contrary or conflicting" local law related to the Statewide minimum age provision, but otherwise affirms the authority of local communities to limit and to ban the sale of tobacco products within their municipalities.  St. 2018, c. 157, § 22.

Two years later, the town of Brookline (town) went further than the act, following a long tradition of local communities augmenting the protections against the harmful effects of tobacco products available at the State level.  Specifically, the town approved warrant article 14 (bylaw), which divides

potential consumers of tobacco products into two groups based on birth year:  a group comprising those born before January 1, 2000 (group one); and a group comprising those born on or after that date (group two).  Merchants in the town may sell tobacco products to group one, but not to group two.  Those in group two, no matter the age they attain, will not be able to purchase tobacco from the town's merchants; over time, an increasing percentage of the town's population will comprise group two.  In effect and by design, the bylaw is an incremental prohibition on the sale of tobacco products in the town.

The plaintiffs in this case -- several retailers seeking to sell tobacco products in the town to those in group two who are twenty-one years of age and older (retailers) -- brought the present action under G. L. c. 231A, § 1, for a judgment declaring that the bylaw is preempted by the Tobacco Act. Because the bylaw falls within the type of local law limiting or prohibiting the sale of tobacco products expressly permitted by the act, and because the bylaw is not otherwise inconsistent, contrary, or conflicting with the act's minimum age standard, we conclude that it is not preempted.

Further concluding that the bylaw is rationally related to a legitimate government interest and does not violate the equal protection provisions of art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments to the

Massachusetts Constitution, we affirm the well-reasoned decision of the Superior Court judge dismissing the retailers' amended complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim upon which relief may be granted.[5]

1.  Background.  "We summarize the factual allegations set forth in the complaint and in the undisputed documents incorporated by reference in the complaint . . . 'accepting as true all well-pleaded facts alleged in the complaint.'" Osborne-Trussell v. Children's Hosp. Corp., 488 Mass. 248, 250, 253 (2021), quoting Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 614 (2019).

The retailers are licensed to sell tobacco products in the Commonwealth.  They each seek to sell tobacco products in the town to all consumers who have attained the minimum age of twenty-one as set forth by the Tobacco Act, but are precluded from doing so to those consumers who also fall within group two, having been born on or after January 1, 2000.  In their amended complaint for a declaratory judgment, they assert that the bylaw is preempted by the Tobacco Act and that it violates the State Constitution's equal protection provisions.  A Superior Court

---

[5] We acknowledge the amicus letter submitted by the Commonwealth and the amicus briefs submitted by American Snuff Company, LLC; and medical, public health, and community groups.

judge allowed the Mass. R. Civ. P. 12 (b) (6) motion to dismiss of the defendants, the town and its select board.  The retailers timely appealed, and we transferred the case to this court on our own motion.

2.  Legal framework.  Local communities have a lengthy history of regulating tobacco products to curb the well-known, adverse health effects of tobacco use.  For decades, such local laws have coexisted with State laws, often augmenting available Statewide protections.  See, e.g., American Lithuanian Naturalization Club, Athol, Mass., Inc. v. Board of Health of Athol, 446 Mass. 310, 321-322 (2006) (municipal prohibition on smoking in membership associations not preempted by State law only limiting locations where smoking may be permitted); Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 218, 224 (2001) (Tri-Nel) (affirming authority of local board of health to issue municipal regulation prohibiting smoking in all food service establishments, lounges, and bars despite State statute also regulating smoking in restaurants); Patton v. Marlborough, 415 Mass. 750, 751-752 (1993) (upholding local board of health regulation limiting the operation of cigarette vending machines to certain locations); Take Five Vending, Ltd. v. Provincetown, 415 Mass. 741, 746 (1993) (Take Five) (upholding bylaw forbidding sale of cigarettes from vending

machines despite State statute, which only prohibited vending machine sales to persons under age of eighteen).

Pertinent to the present case, for the thirty-three years prior to 2018, the Statewide minimum age standard for tobacco products prohibited the sale of tobacco products to any person under the age of eighteen.  G. L. c. 270, § 6, as appearing in St. 1985, c. 345.  Many towns and cities went further, raising the minimum age in their locales.[6]  See Reynolds, Crane, & Winickoff, The Emergence of the Tobacco 21 Movement from Needham, Massachusetts, to throughout the United States (2003-2019), 109 Am. J. Pub. Health 1540, 1546 (2019) (over 175 towns in Massachusetts raised minimum sales age prior to Tobacco Act).

a.  Tobacco Act.  Mirroring the action of these local community laboratories,[7] the Legislature enacted the Tobacco Act,

---

[6] See Winickoff, Gottlieb, & Mello, Tobacco 21 -- An Idea Whose Time Has Come, 370 New Eng. J. Med. 295, 296 (2014) (Needham became first jurisdiction in country to raise minimum age for sales of tobacco products from eighteen to twenty-one).

[7] Municipalities also have led the State in enacting other smoking-related protections.  For example, several municipalities required smoke-free working places before the Legislature enacted "An Act improving public health in the commonwealth," St. 2004, c. 137, § 2, inserting G. L. c. 270, § 22.  See American Nonsmokers' Rights Foundation, Chronological Table of U.S. Population Protected by 100% Smokefree State or Local Laws (Jan. 1, 2024), https://no-smoke.org/wp-content /uploads/pdf/EffectivePopulationList.pdf [https://perma.cc/U8NZ-NEKA]; Dove et al., The Impact of Massachusetts' Smoke-Free Workplace Laws on Acute Myocardial Infarction Deaths, 100 Am. J.

which, inter alia, raised the minimum age for consumers of tobacco products from eighteen to twenty-one, effective December 31, 2018.  See St. 2018, c. 157, §§ 9, 23.  It provides that "[n]o person shall sell or provide a tobacco product to a person who is under [twenty-one] years of age."  G. L. c. 270, § 6 (b), inserted by St. 2018, c. 157, § 9.  Pertinently, § 22 of the act, which we discuss in detail infra, expressly sets forth the Legislature's intent to preempt certain local bylaws and ordinances.  St. 2018, c. 157, § 22.

b.  Bylaw.  Nearly two years after the effective date of the act, town voters approved the bylaw, which amended art. 8.23 of the town's general bylaws as follows:[8]  "No person, firm,

Pub. Health 2206, 2208 (2010) (sixty-one cities and towns implemented workplace smoking bans before State ban).

Similarly, several cities and towns restricted flavored tobacco products before the Legislature passed "An Act modernizing tobacco control," St. 2019, c. 133, § 25, inserting G. L. c. 270, § 28 (b), which restricted flavored tobacco product sales Statewide.  See Campaign for Tobacco-Free Kids, Impact of Restricting the Sale of Flavored Tobacco Products: The Massachusetts Experience, at 1 (July 3, 2023), https://assets.tobaccofreekids.org/factsheets/0421.pdf [https://perma.cc/P4CA-E9KV].

[8] Prior to the amendment of the bylaw, § 8.23.5(d) stated, "No person, firm, corporation, establishment, or agency shall sell tobacco or e-cigarette products to a minor."  Under State law, a minor is "any person under eighteen years of age."  G. L. c. 4, § 7, Forty-eighth.  At the time the voters approved the bylaw, those "born on or after [January 1, 2000]" had not yet turned twenty-one years old.  We take judicial notice of the town's previous and current bylaw, versions of which are also

corporation, establishment, or agency shall sell tobacco or e-cigarette products to <u>anyone born on or after 1/1/2000</u>" (emphasis added).[9]  Thus, as discussed <u>supra</u>, the bylaw divides potential consumers of tobacco products into two groups:  those born before January 1, 2000, as to whom the minimum age to purchase tobacco is twenty-one, as provided by the Tobacco Act (group one); and those born on or after that date, who will not be able to purchase tobacco from the town's retailers regardless of their age (group two).  Over time, an increasing percentage of the town's population will fall within group two, resulting in an incremental prohibition on the sale of tobacco products in

---

available in the appellate record.  See <u>City Council of Springfield</u> v. <u>Mayor of Springfield</u>, 489 Mass. 184, 190 n.6 (2022).

[9] The bylaw also amended § 8.23.5(h) to require sellers of tobacco products in the town to "conspicuously post a sign stating that 'The sale of tobacco or e-cigarette products to someone born on or after 1/1/2000 is prohibited.'"  In the amended complaint, the retailers also challenge this requirement, claiming that it is preempted by the Tobacco Act's requirements regarding signage.  St. 2018, c. 157, § 18 (retailers "shall conspicuously post a notice produced by the department of public health that states the minimum age for a person to purchase a tobacco product").  See 105 Code Mass. Regs. § 665.015(A) (2020) (retail "signage shall include:  [1] a copy of [G. L.] c. 270, §§ 6 and 6A; [2] referral information for smoking cessation resources; [3] a statement that sale of tobacco products, including e-cigarettes, to someone younger than [twenty-one] years old is prohibited; [4] health warnings associated with using electronic nicotine delivery systems; and [5] except in the case of smoking bars, notice to consumers that the sale of flavored tobacco products are prohibited at all times").

the town.  See Town of Brookline, Reports of the Select Board and Advisory Committee on the Articles in the Warrant for the Special Town Meeting, at 14-13 (Nov. 17, 2020) (bylaw is "incrementally phasing out the sale of tobacco over time").

As required by G. L. c. 40, § 32,[10] the town sought and obtained approval of the bylaw from the Attorney General, who concluded that the act did not preempt the bylaw.[11]  The bylaw became effective on August 27, 2021, and enforcement commenced on September 27, 2021.

3.  Discussion.  "We review the allowance of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint."  Osborne-Trussell, 488 Mass. at 253, quoting Ryan, 483 Mass. at 614.  "We draw all reasonable inferences in the plaintiff[s'] favor, and determine whether the allegations plausibly suggest that the plaintiff[s are] entitled

_____

[10] General Laws c. 40, § 32, provides:  "Except to the extent that a zoning by-law may take effect as provided in [G. L. c. 40A, § 5], before a by-law takes effect it shall be approved by the attorney general . . . ."

[11] The Attorney General reasoned that "the preemptive effect of the [Tobacco Act] is limited to local laws that would allow tobacco sales to those under the age of twenty-one (except in the limited circumstances listed in [St. 2018, c. 157, § 22])." Because "both [the Tobacco Act and the bylaw] aim for the same goal of barring the sale of tobacco products to those under the age of twenty-one," because the bylaw "simply goes further than the [Tobacco Act]," and in view of "the broad public health power of municipalities to regulate tobacco products," the Attorney General reasoned that the bylaw was not inconsistent, contrary, or conflicting with the Statewide minimum sales age.

to relief on that legal claim" (quotations omitted).  Osborne-Trussell, supra, quoting Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 481 Mass. 13, 17 (2018).

a.  Preemption.  We first consider whether the Tobacco Act preempts the bylaw's prohibition on tobacco sales to those born on and after January 1, 2000 -- a question of statutory interpretation that we review de novo.  See Commonwealth v. Rainey, 491 Mass. 632, 641 (2023).  "Our primary goal in interpreting a statute is to effectuate the intent of the Legislature . . . 'begin[ning] with . . . the plain language of the statute.'"  Id., quoting Patel v. 7-Eleven, Inc., 489 Mass. 356, 362 (2022).

> "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."

Rainey, supra, quoting Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).

"Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent." Sharris v. Commonwealth, 480 Mass. 586, 594 (2018), quoting Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008).  "Where the statutory language is not conclusive, we may 'turn to extrinsic sources, including the legislative history and other

statutes, for assistance in our interpretation.'" HSBC Bank USA, N.A. v. Morris, 490 Mass. 322, 332-333 (2022), quoting Chandler v. County Comm'rs of Nantucket County, 437 Mass. 430, 435 (2002). Furthermore, we do not construe a statutory provision in isolation; instead, we "look to the statutory scheme as a whole . . . so as to produce an internal consistency within the statute" (quotations and citations omitted). Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019).

"Municipal by-laws are presumed to be valid." Take Five, 415 Mass. at 744. A town exceeds its power "only when it passes a by-law inconsistent with the [State] Constitution or laws of the Commonwealth" (quotation and citation omitted). Id. See art. 2 of the Amendments to the Massachusetts Constitution, as amended by art. 89, § 6, of the Amendments ("[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court" [emphasis added]); G. L. c. 43B, § 13.

Importantly, State laws and local ordinances and bylaws can and often do exist side by side. See Bloom v. Worcester, 363 Mass. 136, 156 (1973) ("[t]he existence of legislation on a subject, however, is not necessarily a bar to the enactment of

local ordinances and by-laws exercising powers or functions with respect to the same subject").  This is particularly true of local ordinances and bylaws regulating public health, the importance of which we have long acknowledged.  See Baker v. Boston, 12 Pick. 184, 193 (1831) ("[a]mong these [local] powers no one is more important than that for the preservation of the public health"); Vandine, petitioner, 6 Pick. 187, 192 (1828) ("[t]he great object of the city is to preserve the health of the inhabitants").

With deference to the role local communities historically have played as laboratories for potential Statewide standards,[12] municipal laws are afforded "considerable latitude"; we require "a sharp conflict" between the local and State laws before concluding that the local law is preempted.  Bloom, 363 Mass. at 153, 154.  See Tri-Nel, 433 Mass. at 223, quoting Take Five, 415 Mass. at 744 (to assess whether reasonable health regulation is inconsistent with State statute, local board afforded "considerable latitude," and preemption of local law requires "sharp conflict" with State statute).

---

[12] See discussion and note 7, supra; Baker, 12 Pick. at 193 (localities "have necessarily the power of deciding in what manner" to mitigate effect of nuisance that may endanger public health).

A sharp conflict exists only where "[t]he legislative intent to preclude local action [is] clear." St. George Greek Orthodox Cathedral of W. Mass., Inc. v. Fire Dep't of Springfield, 462 Mass. 120, 125-126 (2012) (St. George), quoting Bloom, 363 Mass. at 155.  This preemptive intent may be stated expressly by the Legislature, or it may be implied where "the purpose of the statute cannot be achieved in the face of the local [rule]."[13]  Tri-Nel, 433 Mass. at 223, quoting Take Five, 415 Mass. at 744.  See Wendell v. Attorney Gen., 394 Mass. 518, 528 (1985) ("[t]he question . . . is whether the local enactment will clearly frustrate a statutory purpose").  Guided by these principles, we examine the act to determine whether it evinces a clear legislative intent to preclude local action.

   i.  Express preemption provision.  A.  Section 22.  We begin with § 22 of the act, which expressly delineates the

_____

   [13] See, e.g., St. George, 462 Mass. at 128-130 (statute empowering State board to adopt comprehensive State building code "intended to occupy a field" and preempted local ordinance purporting to require use of only one of four State-approved fire protection systems); Connors v. Boston, 430 Mass. 31, 40-41 (1999) (State group insurance provision preempted city ordinance purporting to extend coverage to domestic partners where purpose of State law, as expressed in legislative record, was to achieve uniformity across government insurance programs to effectuate cost containment and where ordinance would foil that aim); Wendell v. Attorney Gen., 394 Mass. 518, 529 (1985) (local bylaw purporting to authorize local board to regulate use of pesticides in town preempted by State-level statute authorizing centralized State-level subcommittee to propound standards for pesticide use).

Legislature's intent as to the preemptive scope of the act.  See

St. 2018, c. 157, § 22.  It provides:

> "This act shall preempt, supersede or nullify any
> inconsistent, contrary or conflicting state or local law
> relating to the minimum sales age to purchase tobacco
> products; provided, that this act shall neither preempt,
> supersede nor nullify any inconsistent, contrary or
> conflicting local law in effect on December 30, 2018 that
> prohibits the sale of tobacco products to persons under the
> age of [nineteen], [twenty], or [twenty-one] as applied to
> persons who attained the age of [eighteen] before December
> 31, 2018.  This act shall not otherwise preempt the
> authority of any city or town to enact any ordinance, by-
> law or any fire, health or safety regulation that limits or
> prohibits the purchase of tobacco products."  (Emphases
> added.)

Most relevant to our analysis, the second sentence of § 22

evinces that the Legislature intended a narrow preemptive scope,

preserving to local municipalities plenary authority to limit

and indeed to ban outright the purchase of tobacco products in

their communities so long as the local ordinance or bylaw is not

"otherwise" preempted.  Thus, the bylaw, which limits tobacco

product sales in the town and over time is an incremental

prohibition on those sales, expressly is permitted by the second

sentence of § 22, unless it is "otherwise" preempted.

As the retailers correctly note, the word "otherwise"

refers to the first clause of the first sentence of § 22.  That

clause sets forth the legislative intent to preempt "any

inconsistent, contrary or conflicting . . . local law relating

to the minimum sales age to purchase tobacco products."  St.

2018, c. 157, § 22.  The phrase "minimum sales age to purchase tobacco products" in the clause necessarily refers to the minimum sales age provision of the act, which is the only provision of the act regarding a minimum sales age to purchase tobacco products (emphasis added).[14]  Significantly, the act's minimum sales age provision neither states that everyone may buy tobacco products once they reach the Statewide minimum age nor authorizes any person to sell tobacco products to those who attain that age.  Instead, the act sets forth, in restrictive terms, a prohibition on sales to persons under twenty-one, stating "[n]o person shall sell or provide a tobacco product to a person who is under [twenty-one] years of age."[15]  G. L. c. 270, § 6 (b), as appearing in St. 2018, c. 157, § 9.

Thus, passing over the question whether the bylaw "relat[es] to the minimum sales age to purchase tobacco

---

[14] The act also refers to minimum age in connection with the sale of "tobacco rolling papers to a person under the age of [twenty-one]."  St. 2018, c. 157, § 9.  This provision, however, does not concern "minimum sales age to purchase tobacco products."  See id. (definition of "tobacco product" does not include tobacco rolling papers).   The only antecedent basis for the clause in § 22 is the Statewide minimum age provision for the sale of tobacco products.

[15] Section 22 describes the minimum age provision as the "minimum sales age to purchase tobacco" -- a reference to the act's prohibition of sales to persons under the age of twenty-one (emphasis added).   St. 2018, c. 137, §§ 9, 22.

products,"[16] our query centers on whether the bylaw is "inconsistent, contrary or conflicting"[17] with the Tobacco Act's prohibition on sales of tobacco products to individuals who are under the Statewide minimum age of twenty-one.  Applying the plain and ordinary meaning of these terms, see note 17, supra, the act expressly preempts local laws that are not compatible with, or in opposition to, the act's Statewide minimum age standard.

---

[16] The parties dispute whether the bylaw "relat[es] to the minimum sales age to purchase tobacco products."  Citing Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985), the retailers contend that "related to" has a broad meaning, requiring "nothing more than 'a connection with or reference to' the matters in question."  See Black's Law Dictionary (10th ed. 2014) ("related" means "[c]onnected in some way").  See also Pace v. Signal Tech. Corp., 417 Mass. 154, 156 (1994) ("relates to" has "broad common-sense meaning" that requires only "connection with or reference to" the subject matter [citations omitted]).  The bylaw, the retailers assert, "contemplates an ever-increasing minimum age for purchasing tobacco products" and thus relates to the minimum sales age.  The town disagrees and contends that the bylaw is not a minimum age law at all as those in group two (born on or after January 1, 2000) will never attain an age -- minimum or otherwise -- when they will be able to purchase tobacco products from town retailers.  Because we conclude that the bylaw is not "inconsistent, contrary or conflicting" with the Statewide minimum age provision of the Tobacco Act, we need not resolve the parties' differing characterizations of the bylaw.

[17] The term "inconsistent" means "not compatible with another fact or claim."  Merriam Webster Collegiate Dictionary 631 (11th ed. 2020).  "Contrary" means "a fact or condition incompatible with another."  Id. at 271.  "Conflicting" means "being in conflict, collision, or opposition."  Id. at 261.

B.  <u>Compatibility of bylaw with act</u>.  The retailers maintain that the bylaw is not compatible with the Statewide minimum age standard because it sets a different standard. Certainly, the retailers are correct insofar as if a local law permitted sales of tobacco products to persons under the Statewide minimum age of twenty-one, it would be incompatible with, and in opposition to, the Statewide standard.  Of course, the bylaw does no such thing.[18]  Instead, the bylaw leaves

---

[18] This conclusion is buttressed by the second clause of the first sentence of § 22, which provides additional guidance as to the type of local laws the Legislature considered to be "inconsistent, contrary or conflicting" and confirms that such laws include those that permit sales to persons younger than twenty-one years of age.  Specifically, the clause provides that the act does not preempt preexisting "inconsistent, contrary or conflicting" local laws that, despite the prior State standard of eighteen years, prohibited tobacco sales to persons aged nineteen, twenty, and twenty-one; thus, if a local community's preexisting law banned sales to persons in these age groups, those local laws continued to apply to persons already age eighteen on the act's effective date.  Accordingly, the Legislature understood that preexisting local laws relating to the minimum age to purchase tobacco products that are "inconsistent, contrary or conflicting" include those laws that set a lower minimum age than twenty-one years of age -- namely, nineteen or twenty years of age.  Such laws, the Legislature understood, otherwise would fall within the preemptive scope of the first clause of § 22; to preserve them, the Legislature created this carve-out.

To be sure, the clause also exempts from preemption preexisting local laws setting the minimum age to purchase tobacco products at twenty-one years.  Obviously, a local law that mirrors the State standard of twenty-one is not inconsistent, contrary, or conflicting.  We do not construe the Legislature's reference to these preexisting laws to suggest that it understood such laws to be "inconsistent, contrary or

untouched the Statewide prohibition on sales to persons under the age of twenty-one and augments the prohibition to extend to all persons in group two.  In other words, the bylaw is more restrictive than the Statewide minimum age standard.

In assessing whether this type of local law is incompatible with the Statewide standard, our decision in Take Five is instructive.  There, a company that had obtained State licenses to operate cigarette vending machines in Provincetown challenged a local ordinance banning the sale of cigarettes by machine. Take Five, 415 Mass. at 743.  Specifically, the company argued that a State statute, which only prohibited the vending machine sales of cigarettes to minors, preempted the local bylaw, which prohibited all such sales.  Id. at 746.  See G. L. c. 64C, § 10. We concluded that the local bylaw was not inconsistent with the statute; both restricted minors' access to cigarettes, and thus the "by-law does not detract from, but rather augments," the statute.  Take Five, supra.

---

conflicting" with the Statewide minimum age standard.  Instead, the inclusion of preexisting local laws that set the minimum age at twenty-one was intended to preserve the status quo for persons who were already eighteen on the act's effective date but were precluded from purchasing tobacco products in local communities that had already set the minimum age to twenty-one. Absent the provision preserving such preexisting local laws, as discussed infra, sales to such eighteen year olds would be permitted pursuant to § 19.

Similarly, in Tri-Nel, 433 Mass. at 223-224, we considered whether a municipal regulation prohibiting smoking "in all food service establishments, lounges and bars" was preempted by a State statute, which only prohibited smoking in certain venues, including in restaurants of a certain seating capacity, other than in an area specifically designated as a smoking area. See G. L. c. 270, § 22, inserted by St. 1987, c. 759, § 3. Concluding that the regulation was not preempted by the statute, we reasoned that the statute set forth "minimum Statewide restrictions on smoking in restaurants to protect and accommodate the nonsmoking public"; accordingly, the local regulation, which placed additional restrictions on smoking, was not inconsistent with the statute because it "further[ed], rather than frustrate[d], this intent." Tri-Nel, supra at 224-225.

Here, the act prohibits sales to persons under the age of twenty-one. That the bylaw goes further does not render it incompatible with the State statute; instead, the bylaw (like those in Take Five and Tri-Nel) augments the State statute by further limiting access to tobacco products to persons under the age of twenty-one. See Oyster Creek Preservation, Inc. v. Conservation Comm'n of Harwich, 449 Mass. 859, 866 (2007) (where State "act establishes Statewide minimum wetlands protection standards, . . . local communities are free to impose more

stringent requirements").  Indeed, the Legislature expressly set forth its intent to continue to allow municipalities to play their traditional role in enacting local limitations on tobacco products sales, including entire prohibitions.  See St. 2018, c. 157, § 22.  Cf. Wendell, 394 Mass. at 529 (finding preemption where bylaw would add "[a]n additional layer of regulation" that "would prevent . . . the identifiable statutory purpose of having centralized, Statewide determination" of reasonable pesticide uses).

The retailers contend that § 22's preemption of "inconsistent, contrary or conflicting" local bylaws and ordinances reflects the Legislature's intent to foreclose a "patchwork" of local laws, by preempting every "local by-law that references the minimum age for purchasing tobacco products."  But if eliminating all local enactments related to the minimum age to purchase tobacco products was the legislative aim, the inclusion of the phrase "inconsistent, contrary or conflicting" would be superfluous.[19]  See Commonwealth v. Moreau,

---

[19] In furtherance of their argument, the retailers rely on portions of the statements of two legislators, as well as a portion of a comment of the then Governor, as reported on a local news website.  Where, as here, the legislative intent is discernable from the plain language of the statute, we need not rely on the legislative history.  See Garcia v. Steele, 492 Mass. 322, 326 (2023) ("[w]here the statutory command is straightforward, there is no reason to resort to legislative history" [quotation and citation omitted]).  Indeed, even if

resort to legislative history were apt, the culled portions of the statements of two of the over one hundred legislative "sponsors" of the act is not an appropriate "source from which to determine the intent of legislation." Boston Water & Sewer Comm'n v. Metropolitan Dist. Comm'n, 408 Mass. 572, 578 (1990).

Moreover, in their statements in support of the act, while the two legislators briefly referenced the existing local laws that already had raised the minimum age, they overwhelmingly focused on the health concerns from tobacco products, the correlation of early access to tobacco products and addiction, the need to address the tobacco industry's targeting of young persons with vaping products, and the costs to the economy of tobacco products. See State House News Service (House Sess.), May 9, 2018 (statement of Rep. Kate Hogan, co-chair, Joint Committee on Public Health); State House News Service (Sen. Sess.), June 28, 2018 (statement of Sen. Jason Lewis, co-chair, Joint Committee on Public Health). No review of the available legislative history supports the conclusion advocated by the retailers that the purpose of the act was to protect merchants from local action. See State House News Service (House Sess.), May 9, 2018 (statement of Rep. Paul McMurtry) (act has "three life-saving components": raising minimum sales age of tobacco to twenty-one, prohibiting tobacco sales in pharmacies, and aligning e-cigarettes with smoke-workplace laws). Indeed, the two legislators highlighted the leading role that municipalities had played in protecting young persons from the dangers of tobacco products; they did not indicate an intent to prevent future local action. See Statement of Rep. Hogan, supra ("More than 170 cities and towns have led the way . . ." [emphasis added]); Statement of Sen. Lewis, supra ("local boards of health have a lot of authority to enact regulations" and "[i]n many ways this is very positive"). See also Lazlo L. v. Commonwealth, 482 Mass. 325, 333 n.13 (2019) (we do not consider legislators' statements when parties "paint an incomplete picture of the intent behind a particular act by 'cherry picking' statements of various legislators"). Similarly, the news website that reported on the Governor's comments when he signed the act noted that he simultaneously acknowledged his support for local action, as opposed to Statewide measures. See Massachusetts Raises Statewide Tobacco Buying Age to 21, MassLive (July 27, 2018), https://www.masslive.com/politics /2018/07/massachusetts_raises_statewide.html [https://perma.cc /BA8S-LFRW] ("Baker acknowledged that he is typically a supporter of local control. In this case, more than 170

490 Mass. 387, 389 (2022), quoting Wolfe v. Gormally, 440 Mass. 699, 704 (2004) ("a statute [must] be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous").

C. Section 19. The retailers' reliance on § 19 of the act fares no better. Section 19 provides that

> "the prohibition [of the Tobacco Act] on sales of tobacco products to persons under the age of [twenty-one] shall not prohibit such sales to persons who attained the age of [eighteen] before December 31, 2018; provided, however, notwithstanding [§] 22, that a person who attained the age of [eighteen] before December 31, 2018 shall be subject to any municipal ordinance, by-law or other regulation that prohibited sales of tobacco products to persons under the age of [nineteen, twenty, or twenty-one] in effect on December 30, 2018" (emphasis added).

St. 2018, c. 157, § 19. Section 19 sets forth the legislative intent to exempt from the act's Statewide minimum age prohibition sales to persons who were able to purchase tobacco products prior to the act so long as such sales were not prohibited by preexisting local laws. The phrase "notwithstanding [§] 22" reflects the Legislature's understanding that local laws relating to the minimum age to purchase tobacco products that are "inconsistent, contrary or conflicting" include those laws that set a lower minimum age than twenty-one years. Such laws, the Legislature understood,

---

municipalities already raised the tobacco purchase age above [eighteen]").

otherwise would fall within the preemptive scope of the first clause of § 22; to preserve them, the Legislature created this carve-out.

The retailers maintain that § 19 contemplates that "even local by-laws prohibiting the sale of tobacco to persons under the age of twenty-one -- seemingly consistent with the [a]ct -- are preempted by [§] 22." The conclusion is unsupported. As discussed in note 18, supra,[20] a local law that mirrors the State standard of twenty-one obviously is not "inconsistent, contrary or conflicting" with the age standard of twenty-one set by the act. We decline the retailers' invitation to conclude that the Legislature believed otherwise. See Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 594 (2019), quoting Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982) ("[w]e assume the Legislature intended to act reasonably").

Instead, it is evident that the Legislature referenced preexisting local laws that set the minimum age at twenty-one in § 19 to ensure that the act did not change the status quo for persons who were already eighteen on the act's effective date but were precluded from purchasing tobacco products in local

---

[20] Section 19 echoes the second clause of the first sentence of § 22, related to the Legislature's intent not to preempt certain preexisting local laws as applied to persons who were eighteen years of age at the time of the act's effective date. See note 18, supra.

communities that had already set the minimum age to twenty-one. Without reference to preexisting local laws barring the sale of tobacco products to those under the age of twenty-one years, the initial provision of § 19, which states that the act's Statewide minimum age provision "shall not prohibit such sales to persons who attained the age of [eighteen] before December 31, 2018," could have eviscerated those preexisting local protections. Section 19's reference to § 22 is significant to our analysis not because it refers to preexisting local ordinances and bylaws setting a minimum age of twenty-one, but because it reiterates the Legislature's understanding that "inconsistent, contrary or conflicting" local laws in the preemption provision of § 22 include those local laws that set a minimum age to purchase such products at less than twenty-one years.

In view of the foregoing and the "considerable latitude" municipalities are afforded in crafting local rules, § 22 is not the type of "clear" expression of the Legislature's intent necessary to preclude local action. That the bylaw "augments" the protections available Statewide pursuant to the minimum age provision does not render it "inconsistent, contrary or conflicting" with that provision. Instead, as expressly permitted by the second sentence of § 22, the bylaw is the type of local measure that "limits or prohibits the purchase of tobacco products." St. 2018, c. 157, § 22. In short, the bylaw

is not in "sharp conflict" with the act's minimum age provision as required for a determination of preemption. Bloom, 363 Mass. at 154.

ii. Implied preemption. Finding no express preemption of the bylaw, we consider whether the act impliedly preempts the bylaw by frustrating the purpose of the act. We conclude that it does not.

The Legislature's intent, as its title reflects, was to "protect[] youth from the health risks of tobacco and nicotine addiction." St. 2018, c. 157. Toward that end, the act prohibits sales to those under twenty-one years of age, aiming to restrict the sale of tobacco products and to limit access to those products by persons under twenty-one.[21] Other provisions of the act reflect a legislative intent to protect against the harmful effects of tobacco products and restrict the purchase

---

[21] The retailers claim that the purpose of the Tobacco Act was "actually to benefit tobacco retailers . . . by eliminating the confusion that arises when the minimum age for purchasing tobacco varies from town to town and city to city across the Commonwealth." To the contrary, the act reflects the legislative intent to protect young persons and other vulnerable populations from the deleterious health effects of tobacco product use. See note 22, infra. Moreover, the Legislature expressly permitted local communities to limit and to ban tobacco product sales altogether, St. 2018, c. 157, § 22, hardly evincing an intent to "benefit" tobacco retailers.

and use of tobacco generally, and especially by youth and other vulnerable populations.[22]

The bylaw furthers these purposes. Over time, the bylaw broadens the separation between those under twenty-one years of age and those to whom tobacco products may be sold in the town, eventually banning sales of such products in the town altogether. In other words, the group two cohort will have less access to tobacco products because it is likely that fewer individuals in their social circles will be able to purchase tobacco, reducing the likelihood that persons in group two will begin to use such products in the first instance. See Town of Brookline, Reports of the Select Board and Advisory Committee on the Articles in the Warrant for the Special Town Meeting (Nov. 17, 2020) (bylaw "helps to prevent the future targeting of not

_____

[22] The act prohibits the sale of tobacco by health care institutions and retail pharmacies, St. 2018, c. 157, § 8, and prohibits the use of tobacco on school grounds and by nursing home employees in patient care areas, id. at §§ 4, 7. It also establishes a special legislative commission to "study the potential negative health effects of using different e-cigarette devices" and to "develop[] best practices for restricting the use of e-cigarette devices in and near schools." Id. at § 21.

The act also prohibits manufacturers and retailers from distributing free samples of tobacco products in retail or other commercial establishments, id. at § 9; requires retailers to conspicuously post a notice indicating the minimum sales age of twenty-one, id. at § 18; requires child-resistant packaging for liquid nicotine, id. at § 13; and allows the commissioner of public health to "promulgate regulations to restrict the sale of tobacco products to persons under the age of [twenty-one]," id. at § 17.

only underage users but the extended social circle that can possibly provide increased access").  Also, as the market base for tobacco products in the town shrinks, the economic incentives to sell the products in the town reduce.  See Prohibition Juice Co. v. United States Food & Drug Admin., 45 F.4th 8, 12 (D.C. Cir. 2022) ("Businesses seeking to make a profit selling tobacco products . . . face powerful economic incentives to reach younger customers").  In brief, the legislative purpose of the minimum age provision of the act -- namely, to prohibit sales to those under twenty-one years of age -- can be achieved in the face of the local law.  See, e.g., Tri-Nel, 433 Mass. at 224-225 (where State statute "sets forth minimum Statewide restrictions on smoking in restaurants to protect and accommodate the nonsmoking public," local "ban placing additional restrictions on smoking furthers, rather than frustrates, this intent").

The retailers maintain that the bylaw would frustrate the purported aim of § 19 to preserve the right to purchase tobacco products for those who were able to do so under the prior State and local law.[23]  But this misapprehends § 19.  That provision

_____

[23] The bylaw went into effect on August 27, 2021.  The town's previous bylaw prohibited sales of tobacco products to minors.  See note 8, supra.  Therefore, as of the effective date of the act, December 31, 2018, retailers in the town were not prohibited from selling tobacco products to some individuals in

only provides that the act itself would not preclude merchants from continuing to sell to those who had already turned eighteen years of age at the time of the effective date.  Section 19 says nothing about the authority of cities and towns to limit the sale of tobacco products to those who had already turned eighteen.  Indeed, as discussed supra, § 22 of the act expressly allows localities to prohibit tobacco sales in full, including to those who had already turned eighteen.  For these reasons, the act does not expressly or impliedly preempt the bylaw.[24]

b.  Equal protection.  We next consider whether the bylaw violates the equal protection guarantees of the State

---

group two -- namely, persons born in 2000.  After the bylaw went into effect, the retailers could no longer sell tobacco products to these persons.

[24] The retailers marshal no argument that the bylaw's signage requirement is preempted that differs from their arguments related to the act's Statewide minimum age provision; as such, their challenge to the bylaw's signage requirements also fails.  Moreover, the act does not expressly preempt local laws pertaining to signage.  See St. 2018, c. 157, § 18.  The bylaw's signage requirements do not frustrate the purpose of the State signage requirement.  Compliance with the bylaw's signage requirement does not prevent sellers from complying with State regulations.  Compare 105 Code Mass. Regs. § 665.015(A) (requiring sign to include copy of act, referral information for smoking cessation resources, statement that sale to those under twenty-one is prohibited, health warnings, and statement on flavored tobacco ban), with § 8.23.5(H) of the town's bylaw (requiring sign to state that "[t]he sale of tobacco or e-cigarette products to someone born on or after 1/1/2000 is prohibited").

Constitution.[25]  The retailers argue that the bylaw discriminates on the basis of birth year, which they contend requires application of a heightened level of scrutiny.[26]  We disagree.

The bylaw neither burdens a fundamental right[27] nor discriminates based upon a suspect classification.  See Commonwealth v. Fernandes, 487 Mass. 770, 777 (2021), cert. denied, 142 S. Ct. 831 (2022); Finch v. Commonwealth Health Ins. Connector Auth., 459 Mass. 655, 663 (2011), S.C., 461 Mass. 232

---

[25] Article 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments to the Massachusetts Constitution, states in full,

> "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness.  Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

Other articles of the Massachusetts Constitution also provide equal protection guarantees.  See Finch v. Commonwealth Health Ins. Connector Auth., 459 Mass. 655, 668 (2011), S.C., 461 Mass. 232 (2012), citing arts. 6, 7, and 10 of the Massachusetts Declaration of Rights.

[26] The retailers alternatively ask us to apply "enhanced rational basis" review, an "intermediate level of judicial scrutiny," or "heightened rational basis review."

[27] The retailers rightly do not argue that the purchase of tobacco products, or the sale thereof, is a fundamental right. See Kligler v. Attorney Gen., 491 Mass. 38, 58 (2022), quoting Obergefell v. Hodges, 576 U.S. 644, 664 (2015) (fundamental rights under State Constitution are "interests of the person so fundamental that the State must accord them its respect").

(2012). The bylaw does not target "a prototypical example of [a] 'discrete and insular" minority,'" Finch, supra at 674-675, quoting Graham v. Richardson, 403 U.S. 365, 372, 375-376 (1971), or a "historically disadvantaged or unpopular" group, Massachusetts v. United States Dep't of Health & Human Servs., 682 F.3d 1, 10 (1st Cir. 2012), cert. denied, 570 U.S. 931 (2013).

To the contrary, many of those within group two -- the class of persons born on or after January 1, 2000 -- can vote, including in favor of a new tobacco bylaw if they wish. Cf. Finch, 459 Mass. at 675 n.20 ("[l]ack of the franchise is a substantial, although certainly not the sole, concern underlying the rule that classification on the basis of alienage is generally suspect"). Those who cannot -- minors -- traditionally have been subject to protections society deems appropriate for our children. See, e.g., G. L. c. 10, § 29 (minors cannot purchase lottery tickets); G. L. c. 159A, § 9 (minors cannot drive common carrier vehicles for hire). Indeed, State and local laws prohibiting sales of tobacco products to these nonvoting members of group two have long been in place. See G. L. c. 270, § 6 (b), as appearing in St. 1985, c. 345. Accordingly, we decline the retailers' invitation to apply a heightened level of scrutiny to the bylaw. Cf. Commonwealth v. Freeman, 472 Mass. 503, 506 (2015) (no heightened scrutiny for

classification based on date of arraignment); English v. New
England Med. Ctr., Inc., 405 Mass. 423, 428 (1989), cert.
denied, 493 U.S. 1056 (1990) (no heightened scrutiny for statute
that limits damages for tort victims of charitable
institutions).

Instead, we consider whether the bylaw "is rationally
related to the furtherance of a legitimate [S]tate interest"
(citation omitted). Commonwealth v. Roman, 489 Mass. 81, 86
(2022). Here, the town clearly has a legitimate interest;
indeed, "we have previously recognized the ill effects of
tobacco use, particularly when it involves minors, as a
legitimate municipal health concern justifying municipal
regulation of tobacco products." Tri-Nel, 433 Mass. at 222.
See Take Five, 415 Mass. at 748 (concluding that town bylaw
prohibiting sale of cigarettes by vending machine is rationally
related to "serious public health concerns" such as "[k]eeping
young people from smoking"). See also Food & Drug Admin. v.
Brown & Williamson Tobacco Corp., 529 U.S. 120, 161 (2000)
("tobacco use, particularly among children and adolescents,
poses perhaps the single most significant threat to public
health in the United States"). The retailers do not suggest
otherwise.

The retailers contend that the birthdate cutoff of January
1, 2000, is arbitrary and thus not rationally related to the

town's legitimate interest. We disagree. Line drawing -- a legislative necessity -- does not, without more, make a law unconstitutional. See Roper v. Simmons, 543 U.S. 551, 574 (2005) (line drawing "is subject, of course, to the objections always raised against categorical rules," but "a line must be drawn"). The bylaw's birthdate classification, starting in the year 2000, is rationally related to the town's legitimate interest in mitigating tobacco use overall and in particular by minors. Few individuals in group two could purchase tobacco products prior to the bylaw's enactment.[28] Grouping this subset of young adults with minors, who could not purchase tobacco products under the preexisting law, rationally relates to curbing minors' use of tobacco products because, inter alia, the young adults are closer in age to minors. This, in turn, the town could conclude rationally, might limit access to tobacco products by younger persons. Also, these young adults within group two, because they only recently were able to purchase tobacco products, might not have yet formed addictive habits. The bylaw also is a rational alternative to an immediate and outright ban on sales of all tobacco products, preserving in-town sales to those in group one who may already suffer from addiction. And it provides sellers time to adjust to revenue

---

[28] See note 23, supra.

losses that stem from shrinking tobacco product sales.  For these reasons, the bylaw does not violate the guarantees of equal protection.

<u>Judgment affirmed</u>.